Steven N. Geise (SBN 249969)
JONES DAY
sngeise@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Tel: (858) 314-1200

*[Additional counsel identified on signature page]*
*Counsel for Plaintiffs*
R.J. Reynolds Tobacco Company; R.J. Reynolds Vapor Company; American Snuff Company, LLC; Santa Fe Natural Tobacco Company, Inc.; Modoral Brands Inc.; Neighborhood Market Association, Inc.; and Morija, LLC dba Vapin' the 619

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY; R.J. REYNOLDS VAPOR COMPANY; AMERICAN SNUFF COMPANY, LLC; SANTA FE NATURAL TOBACCO COMPANY, INC.; MODORAL BRANDS INC.; NEIGHBORHOOD MARKET ASSOCIATION, INC.; and MORIJA, LLC dba VAPIN' THE 619, <br><br> *Plaintiffs*, <br><br> v. <br><br> ROBERT BONTA, in his official capacity as Attorney General of California; and SUMMER STEPHAN, in her official capacity as District Attorney for the County of San Diego, <br><br> *Defendants*. | Case No. **'22 CV 1755 BEN MSB** <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Plaintiffs R.J. Reynolds Tobacco Company ("RJRT"), R.J. Reynolds Vapor
2    Company ("RJRV"), American Snuff Company, LLC ("ASC"), Santa Fe Natural
3    Tobacco Company, Inc. ("Santa Fe"), Modoral Brands Inc. ("Modoral"),
4    Neighborhood Market Association, Inc., and MORIJA, LLC dba Vapin' the 619
5    bring this action for declaratory and injunctive relief against Defendants Robert
6    Bonta, in his official capacity as Attorney General of California, and Summer
7    Stephan, in her official capacity as District Attorney for the County of San Diego.

8                              **PRELIMINARY STATEMENT**

9         1.    Under the federal Tobacco Control Act ("TCA"), states and localities
10   have broad authority to regulate the sale of tobacco products. But one thing they
11   cannot do is completely prohibit their sale because they do not meet the state or
12   locality's preferred "tobacco product standards." Nonetheless, on November 8, 2022,
13   Californians voted to approve SB793, which bans the sale of "flavored tobacco
14   products" throughout the state. *See* Cal. Sec'y of State, State Ballot Measures –
15   Statewide Results, https://tinyurl.com/224csfnk (reporting that as of 8:05 a.m. on
16   Nov. 9, 2022, 95.1% of precincts had partially reported results, and 62.3% of voters
17   approved SB793); *see also 2022 California midterm election: Live results*, L.A.
18   Times, https://tinyurl.com/jdbxbdxw (last visited Nov. 9, 2022) (reporting that
19   SB793 has been approved). The ban will take effect five days after the Secretary of
20   State certifies the results of the vote, which must occur by December 16, 2022. *See*
21   Cal. Const., art. II, § 10(a); Cal. Elec. Code § 15501(b).

22        2.    California's SB793 cannot stand because it is preempted by the federal
23   Tobacco Control Act. *First*, the ban falls under the TCA's express preemption clause,
24   which preempts "any [state] requirement" that is "different from, or in addition to,"
25   a federal requirement about a tobacco product standard. A flavor ban is a
26   paradigmatic tobacco product standard. 21 U.S.C. § 387p(a)(2)(A). Indeed, one of
27   the only tobacco product standards that Congress itself adopted in the TCA was a ban
28   on flavored cigarettes except menthol ones. *Id.* § 387g(a)(1)(A). The state's ban,

however, is broader than the federal one—it bans all characterizing flavors (including menthol) and it applies to tobacco products other than cigarettes. It therefore falls squarely under the TCA's preemption clause. *Second*, the state's ban is not saved by the TCA's savings clause. *Id.* § 387p(a)(2)(B). The TCA distinguishes between requirements "relating to" the sale of tobacco products, on the one hand, and requirements "prohibiting" their sale, on the other. The savings clause saves the first type of requirement, but not the second, and so does not save the state's absolute ban. *Id.* Thus, SB793's ban on flavored tobacco products manufactured and sold by Plaintiffs RJRT, RJRV, ASC, Santa Fe, and Modoral (collectively, "Reynolds") and on flavored tobacco products sold at retail by Plaintiff Vapin' the 619 as well as by members of Plaintiff Neighborhood Market Association is preempted by federal law and therefore invalid.

3.      In addition, because California's law attempts to regulate manufacturers that are not within the state's borders, the law violates the dormant Commerce Clause. And because California's ban does so, it is unconstitutional and must be set aside.

4.      California has no legitimate interest in enforcing its preempted and unconstitutional law. The Court should thus grant injunctive and declaratory relief preventing the Defendants and their agents from violating the U.S. Constitution's Supremacy Clause and Commerce Clause.

## PARTIES

5.      Plaintiff RJRT is a North Carolina corporation headquartered in Winston-Salem, North Carolina. RJRT is a leading manufacturer of tobacco products. In particular, RJRT develops, manufactures, markets, and distributes a variety of flavored tobacco products under a variety of brand names, including menthol cigarettes under the brand names Newport and Camel, among others, and flavored smokeless tobacco products under the brand name Camel SNUS.

6.      Plaintiff RJRV is a North Carolina corporation headquartered in Winston-Salem, North Carolina. RJRV develops, manufactures, markets, and distributes menthol-flavored electronic nicotine delivery devices under the brand name "VUSE."

7.      Plaintiff ASC is a North Carolina corporation headquartered in Winston-Salem, North Carolina. ASC develops, manufactures, markets, and distributes a variety of flavored smokeless tobacco products, including under the brand name "Grizzly."

8.      Plaintiff Santa Fe is a New Mexico corporation headquartered in Oxford, North Carolina. Santa Fe develops, manufactures, markets, and distributes menthol cigarettes under the brand name Natural American Spirit.

9.      Plaintiff Modoral is a North Carolina corporation headquartered in Winston-Salem, North Carolina. Modoral develops, manufactures, markets, and distributes various flavored tobacco products, including nicotine lozenges and pouches, under the brand name VELO.

10.      All of the aforementioned flavored products manufactured and distributed by RJRT, RJRV, ASC, Santa Fe, and Modoral qualify as "flavored tobacco product[s]" for which retail sale is prohibited under SB793.

11.      Neighborhood Market Association is a local non-profit industry trade association comprised of various businesses, including family-owned businesses within San Diego County, California. The Association has members who are tobacco retailers, wholesalers, and manufacturers located within the State that will be subject to SB793 once it goes into effect. Many of the Association's tobacco retailers sell flavored tobacco products, including those manufactured by RJRT, RJRV, ASC, Santa Fe, and Modoral. Those retailers will no longer be able to sell "flavored tobacco product[s]," as defined in Senate Bill 793, once the law goes into effect. But for Senate Bill 793, those members who currently sell flavored tobacco products would continue to do so to consumers in California. Dozens of NMA's members, including

Vapin' the 619, will likely have to close shop completely and lay off their employees if California's ban goes into effect.

12.     MORIJA, LLC is headquartered in El Cajon, California. The company does business as Vapin' the 619 and is a tobacco retailer with a retail establishment located on Clairemont Mesa Boulevard in the City of San Diego, California. The establishment exclusively sells electronic smoking devices and e-liquid tobacco products used in conjunction with such devices. In particular, the establishment sells flavored tobacco products as defined in Senate Bill 793. Vapin' the 619 will no longer be able to sell "flavored tobacco product[s]," as defined in Senate Bill 793, once the law goes into effect. But for Senate Bill 793, Vapin' the 619 would continue to sell flavored tobacco products to consumers in California. If Senate Bill 793 does go into effect, Vapin' the 619 will likely have to close its store permanently and lay off its employees.

13.     Defendant Robert Bonta is sued in his official capacity as Attorney General of California. The Attorney General is "the chief law officer of the State" and exercises "direct supervision over every district attorney." Cal. Const. art. V, § 13. The California Constitution also imposes on the Attorney General the duty "to prosecute any violations of law" and grants him "all the powers of a district attorney" whenever he believes that the law is not being adequately enforced. *Id.* Because a violation of Senate Bill 793 is an "infraction," SB793 § 104559.5(f), the Attorney General has direct enforcement power of the law and supervises district attorneys who also have enforcement power, Cal. Gov. Code § 26500 ("[t]he district attorney is the public prosecutor" who "shall initiate and conduct on behalf of the people all prosecutions for public offenses"); *see also* Cal. Penal Code § 16 (defining "[c]rimes and public offenses" to include "[i]nfractions").

14.     Defendant Summer Stephan is sued in her official capacity as District Attorney for the County of San Diego. As District Attorney, Stephan has the power to enforce Senate Bill 793 because a violation of that law is an "infraction." SB793

§ 104559.5(f); Cal. Gov. Code § 26500 ("[t]he district attorney is the public prosecutor" who "shall initiate and conduct on behalf of the people all prosecutions for public offenses"); *see also* Cal. Penal Code § 16 (defining "[c]rimes and public offenses" to include "[i]nfractions").

## JURISDICTION AND VENUE

15.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

16.    This Court also has authority to grant relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

17.    This judicial district is the proper venue under 28 U.S.C. § 1391(b)(2) because it is where a substantial part of the events giving rise to the claims occurred and where the effects of Senate Bill 793 will be felt. Prior to Senate Bill 793's enactment, Reynolds' flavored tobacco products were sold by retailers in this judicial district, including by members of Neighborhood Market Association. In addition, prior to Senate Bill 793's enactment, members of Neighborhood Market Association as well as Vapin' the 619 sold flavored tobacco products in this judicial district. Senate Bill 793 forbids the sale of nearly all flavored tobacco products in this judicial district, and will thus cause financial injury to Plaintiffs in this district.

## BACKGROUND

### The Tobacco Control Act and Federal Regulation of Tobacco Products

18.    Long before California considered prohibiting flavored tobacco products, Congress enacted a comprehensive regime distributing authority over all aspects of tobacco regulation between FDA and state and local governments. In 2009, Congress enacted the Family Smoking Prevention and Tobacco Control Act of 2009, Public Law No. 111-31, 123 Stat. 1776. Among other things, the Act added a new Chapter IX to the Federal Food, Drug, and Cosmetic Act ("FDCA"), granting FDA primary authority to regulate tobacco products. *See* FDCA §§ 900-919, 21 U.S.C. §§ 387-387s.

19.    The TCA addresses flavors in tobacco products in the section entitled "Tobacco product standards." *Id.* § 387g. Within that section, Congress expressly enacted a "tobacco product standard" that prohibits characterizing flavors in cigarettes other than tobacco or menthol. *Id.* § 387g(a)(1)(A). Congress, moreover, enforced that standard through a sales ban, by providing that any cigarettes containing impermissible characterizing flavors are "adulterated," and cannot be sold. *Id.* §§ 387b(5), 331(a), (c). Thus, federal tobacco product standards explicitly ban all flavored cigarettes except menthol and tobacco flavors. Congress then left it to FDA to decide, subject to various requirements, whether to extend that prohibition to other tobacco products or flavors. *E.g.*, *id.* § 387g(a).

20.    Given the primary role Congress assigned to FDA, Congress also addressed the relationship between federal authority and state and local authority to regulate tobacco products. Congress did so in three interrelated provisions:

21.    *The preservation clause* generally preserves "the authority of" states, localities, the Armed Forces, federal agencies, and Indian tribes to promulgate measures that are "in addition to, or more stringent than, requirements" under the TCA, including "measure[s] *relating to or prohibiting the sale* … of tobacco products by individuals of any age." *Id.* § 387p(a)(1) (emphasis added). While the preservation of those entities' authority is broad, when it comes to state and local governments, the preservation clause has an express exception: If a state or local law falls within the TCA's preemption clause, that law is not protected by the preservation clause. *Id.* (stating that preservation clause applies "[e]xcept as provided in paragraph (2)(A)," *i.e.*, the preemption clause).

22.    *The preemption clause* then prohibits states and localities from "establish[ing] … *any requirement*" that "is different from, or in addition to," federal requirements "relating to *tobacco product standards*, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." *Id.* § 387p(a)(2)(A) (emphasis added).

23.    *The savings clause* then provides an exception to preemption. It saves state and local "requirements *relating to the sale* … of, tobacco products by individuals of any age." *Id.* § 387p(a)(2)(B) (emphasis added). But the clause does not reference—and so does not save—local power to enact "requirements *prohibiting the sale*" of those products. *Compare id.* (savings clause), *with id.* § 387p(a)(1) (preservation clause).

**Plaintiffs and FDA Work To Keep Tobacco Products Away from Youth**

24.    The original motivation for California's ban on flavored tobacco products was to prevent youth usage of tobacco products. *See* Cal. Sen. Comm. on Health, *SB 793 Analysis* (May 2020), https://tinyurl.com/2p93tebk. Plaintiffs and FDA are both committed to keeping tobacco products out of the hands of youth.

25.    Reynolds has taken active steps to prevent youth access to their products. Reynolds is an original sponsor and lead participant in the We Card program. Reynolds requires its contracted retailers to commit to participating in We Card. Since this partnership began in 1995, We Card has trained nearly half a million storeowners, managers, and frontline employees to help prevent youth access to tobacco products.

26.    Reynolds has expanded those efforts, including through use of We Card's "mystery shopper" program, which also will provide additional retailers with further education and training on verifying legal age of purchasers.

27.    In 2018, RJRV took targeted action to ensure youth were not obtaining its vapor products. The company instituted a contract-based tiered compliance program that involves penalties on retailers that are found to have illegally sold VUSE products to youth. In conjunction with this program, RJRV also had its trade marketing representatives discuss the issue of underage youth access with each of RJRV's contracted retailers. And the company provides access to additional materials and resources on preventing youth access to tobacco products via its online customer portal, engageVIP.com.

28.     In 2022, Reynolds expanded its youth access prevention initiatives by extending the contract-based tiered compliance program to include penalties on retailers that are found to have illegally sold any Reynolds product to youth.

29.     FDA also has specifically addressed concerns about youth vaping. In guidance for the industry, FDA stated that it "intends to prioritize enforcement for lack of marketing authorization against any flavored, cartridge-based [electronic nicotine delivery system ("ENDS")] product (other than a tobacco- or menthol-flavored ENDS product) that is offered for sale in the United States without regard to whether or when premarket application for such product has been submitted." FDA, *Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization (Revised)* 19 (Apr. 2020), https://www.fda.gov/media/133880/download ("*Enforcement Priorities*"). By way of background, when FDA promulgated its Deeming Rule, it brought ENDS products within its regulatory umbrella—meaning that before the products were sold, they needed FDA authorization. 81 Fed. Reg. 28,974. At the time, FDA said it would use its enforcement discretion and allow the products to stay on the market for some time even if they had not received FDA authorization. *Id.* at 28,977–78. FDA has now changed course with regard to flavored, cartridge-based ENDS products (other than those that are tobacco- or menthol-flavored). FDA, *Enforcement Priorities* 19. The upshot of the new policy is that flavored, cartridge-based e-cigarettes (other than those that are tobacco- or menthol-flavored) can no longer be sold, unless and until FDA grants authorization for such products.

30.     In addition, as part of the same guidance referred to above, FDA stated that it would prioritize enforcement against ENDS products for which the manufacturer has failed to take adequate measures to prevent minors' access. *Id.* at 3. And FDA will make enforcement a priority with respect to ENDS products that are "targeted to minors or whose marketing is likely to promote use of ENDS by minors." *Id.*

31.  Consistent with that enforcement policy, FDA has issued numerous warning letters to entities that are improperly marketing or selling "unauthorized flavored, cartridge-based ENDS products" and other ENDS products that are being marketed or sold in ways that are appealing to youth. *See, e.g.*, FDA In Brief, *FDA Warns Firm with Over 15 Million Products Listed with FDA to Remove Unauthorized E-Cigarette Products from Market*, (July 28, 2021), https://tinyurl.com/2p92mtd4; FDA In Brief, *FDA Warns Firms for Continuing to Market E-cigarette Products after Agency Denied Authorizations* (Oct. 7, 2021), https://tinyurl.com/563s3mda; FDA, Wa*rning Letter re EVO Brands, LLC and PVG2, LLC d/b/a Puff Bar* (Oct. 6, 2022), https://tinyurl.com/3sua44tp;.

32.  Further, FDA has issued warning letters to manufacturers selling e-cigarette products despite FDA's denial of the manufacturers' premarket tobacco product applications. *E.g.*, FDA, *Warning Letter to Ecig Vapor Juice Store* (Sept. 27, 2022), https://tinyurl.com/mr3f9mrt. FDA is thus taking action to remove products that have received marketing denial orders off the market.

33.  Importantly, however, FDA has continued to allow the sale of many menthol-flavored e-cigarettes. That approach allows menthol cigarette smokers to transition to other "potentially less harmful" menthol-flavored products, which also makes sense because "[d]ata shows that … menthol-flavored ENDS products are not as appealing to minors as other flavored ENDS products." FDA, *Enforcement Priorities* 23–24, 39. As FDA has explained, "[t]his approach"—effectively banning characterizing flavors except for menthol and tobacco—"strikes an appropriate balance between restricting youth access to such products, while maintaining availability of potentially less harmful options for current and former adult smokers who have transitioned or wish to transition completely away from combusted [tobacco- and menthol-flavored] tobacco products." *Id.* at 20.

**The State's Categorical Ban on Flavored Tobacco Products**

34.     On August 28, 2020, the Governor of California signed Senate Bill 793 ("SB793") into law, banning the retail sale of nearly all flavored tobacco products anywhere in the state. A copy is attached to this Complaint as Exhibit 1. SB793 was set to go into effect on January 21, 2021, but a referendum challenging the law qualified to be on the ballot for the November 8, 2022 general election. *See Proposition 31, Qualified Statewide Ballot Measures*, https://tinyurl.com/y6cwbuyr. Accordingly, the referendum suspended operation of SB793 unless and until "it is approved by a majority of voters." *Wilde v. City of Dunsmuir*, 9 Cal. 5th 1105, 1111 (2020); *see* Cal. Const. art. IV, § 8(c)(2).

35.     Plaintiffs previously sued to challenge SB793 in this Court. *R.J. Reynolds Tobacco Co. v. Becerra*, No. 20-CV-1990, 2021 WL 3472697, at *1 (S.D. Cal. Aug. 6, 2021). This Court dismissed that case as unripe. The Court explained that because Proposition 31 had qualified for the ballot, SB793 "will never be enforceable against Plaintiffs (or anyone) if it does not survive the referendum set to go forward on November 8, 2022." *Id.* at *1. The injury the Plaintiffs faced from SB793 was thus "contingent on the outcome of the referendum." *Id.* at *1–2.

36.     The referendum has now occurred and the injury Plaintiffs face is no longer theoretical, but concrete and imminent. On November 8, 2022, Californians went to the polls and approved SB793. *See supra* ¶ 1. That means that the law will go into effect five days after the California Secretary of State formally certifies  the results, which must occur no later than December 16. *See* Cal. Const., art. II, § 10(a); Cal. Elec. Code § 15501(b). Accordingly, without judicial intervention, SB793 will go into effect no later than December 21, 2022.

37.     SB793 states that tobacco retailers "shall not sell, offer for sale, or possess with the intent to sell or offer for sale, a flavored tobacco product or a tobacco product flavor enhancer." SB793 § 104559.5(b)(1).

38.   The law defines "[f]lavored tobacco product" as "any tobacco product that contains a constituent that imparts a characterizing flavor." *Id.* § 104559.5(a)(4). A "constituent" is defined as "any ingredient, substance, chemical, or compound … *that is added by the manufacturer* … during the processing, *manufactur*[*ing*], or packing of the tobacco product." *Id.* § 104559.5(a)(2) (emphasis added).

39.   "Tobacco product" means "[a] product containing, made, or derived from tobacco or nicotine that is intended for human consumption." Cal. Health & Safety Code § 104495(8)(A)(i). "Tobacco product" explicitly includes "cigarettes," "chewing tobacco," "snuff," and electronic nicotine delivery systems. *Id.* §§ 104495(a)(8)(A)(i), (a)(8)(A)(ii). Senate Bill 793 defines "[c]haracterizing flavor" as "a distinguishable taste or aroma, or both, other than the taste or aroma of tobacco, imparted by a tobacco product or any byproduct produced by the tobacco product." SB793 § 104559.5(a)(1). The definition explicitly includes "menthol." *Id.* The sales ban excludes a handful of products sold in certain situations, including shisha tobacco products, premium cigars, and loose leaf pipe tobacco. *Id.* §§ 104559.5(c), (d), (e).

40.   A person who violates the law "is guilty of an infraction and shall be punished by a fine of two hundred fifty dollars ($250) for each violation." *Id.* § 104559.5(f).

41.   At the same time, SB793 excepts from its ban "flavored shisha tobacco products" sold "by a hookah tobacco retailer" if certain "conditions" are met. *Id.* § 104559.5(c) (including license, age restriction, and state and local law compliance preconditions).

42.   In short, the law bans nearly all kinds of flavored tobacco products, including the sale of all menthol flavored cigarettes, menthol flavored e-cigarettes, flavored smokeless tobacco products, and other flavored products, including those specifically found by FDA to be appropriate for the protection of the public health.

**Plaintiffs' Products**

43.   Plaintiffs RJRT, RJRV, ASC, Santa Fe, and Modoral collectively manufacture numerous tobacco products, which are subject to California's prohibition on flavored tobacco products and which Plaintiffs would continue distributing for resale in the state—including in this District—but for Senate Bill 793.

44.   RJRT manufactures various tobacco products—including products with characterizing flavors, such as menthol cigarettes, as well as cigarettes that do not have characterizing flavors—under a variety of brand names, including Newport and Camel. RJRT also manufactures other tobacco-related products, including flavored smokeless tobacco products, under the brand name Camel SNUS.

45.   RJRV manufactures tobacco products. Those include menthol- and tobacco-flavored vaping products, under the brand name VUSE. FDA is reviewing numerous premarket tobacco product applications for currently marketed menthol-flavored VUSE products.

46.   ASC manufactures various smokeless tobacco products—including products with and without characterizing flavors—under the brand name "Grizzly."

47.   Santa Fe manufactures various tobacco products—including menthol cigarettes as well as cigarettes that do not have characterizing flavors—under the brand name Natural American Spirit.

48.   Modoral manufactures various flavored tobacco products, including nicotine lozenges and pouches, under the brand name VELO. FDA is reviewing numerous premarket tobacco product applications for currently marketed flavored VELO products.

49.   RJRT, RJRV, ASC, Santa Fe, and Modoral each desires to continue distributing banned "flavored tobacco products" for resale within California.

50.   Plaintiff Neighborhood Market Association has members who are tobacco retailers and who sell numerous "flavored tobacco product[s]," which are subject to California's prohibition on the sale of flavored tobacco products and which

those members would continue selling in this state—including in this District—but for Senate Bill 793. In particular, members of Neighborhood Market Association sell menthol cigarettes, flavored smokeless tobacco products, flavored vapor products, and other flavored products, including products manufactured by Reynolds. Those members desire to continue selling banned "flavored tobacco product[s]" within the state of California, including in this District.

51.     Plaintiff Vapin' the 619 is a tobacco retailer that sells "flavored tobacco product[s]," particularly flavored vapor products, which are subject to California's prohibition on the sale of flavored tobacco products and which Vapin' the 619 would continue selling in this state—including in this District—but for Senate Bill 793. Vapin' the 619 desires to continue selling banned "flavored tobacco product[s]" within the state of California, including in this District.

52.     The Act's categorical ban on "flavored tobacco product[s]" harms RJRT, RJRV, ASC, Santa Fe, Modoral, members of Neighborhood Market Association, and Vapin' the 619 because it severely restricts their ability to market and sell such products to customers in California.

**CLAIMS FOR RELIEF**

**COUNT I**

**Express Preemption**

53.     The preceding paragraphs are incorporated and re-alleged here.

54.     The Supremacy Clause of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, state laws that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

55.     As of the effective date of Senate Bill 793, Plaintiffs can no longer "sell" "flavored tobacco product[s]" in the state. SB793 § 104559.5(b)(1). Any violation can result in fines. *Id.* § 104559.5(f).

13

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

56.     Under the Tobacco Control Act's preemption clause, the state is prohibited from enacting and enforcing laws that are "different from, or in addition to," any of the Tobacco Control Act's or FDA's requirements relating to federal "tobacco product standards." 21 U.S.C. § 387p(a)(2)(A). The state's ban on flavored tobacco products is "different from, or in addition to," the requirements of federal law, and is thus preempted.

57.     The Tobacco Control Act's savings clause does not save the state's ban on flavored tobacco products, because that clause saves only requirements "relating to" the sale of tobacco products, not requirements "prohibiting" their sale. *Id.* § 387p(a)(2)(B). SB793 totally prohibits the sale of "flavored tobacco products" and thus is not a "requirement relating to" the sale of tobacco products.

58.     Accordingly, the Tobacco Control Act preempts California's ban on flavored tobacco products, rendering it invalid and unenforceable.

59.     Plaintiffs acknowledge that, at this time, this Court is bound by the Ninth Circuit's decision in *R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 29 F.4th 542 (9th Cir. 2022) ("*Los Angeles County*"), which held that "tobacco product standards" preempted by the Tobacco Control Act are limited to regulations of how a "product must be produced" and do not include sales prohibitions. *Id.* at 556. Plaintiffs respectfully maintain that *County of Los Angeles* was wrongly decided. The decision conflicts with the TCA's plain text, decisions of the Supreme Court, and reasoning of decisions from other courts of appeals. Los Angeles County's flavored tobacco product ban, like California's, falls in the heartland of the TCA's preemption clause and is not saved by the savings clause. *See id.* at 561–67 (Nelson, J., dissenting). Moreover, even under the Ninth Circuit's interpretation of the TCA's preemption clause (that "tobacco product standards" are limited to manufacturing regulations), the state's ban qualifies as a requirement related to "tobacco product standards" because SB793 explicitly regulates the manufacturing process. SB793 § 104559.5(a) (defining "[f]lavored tobacco product" with reference to whether a manufacturer

adds a flavoring ingredient during the manufacturing process). Finally, Plaintiffs in *Los Angeles County* have filed a petition for writ of certiorari asking the Supreme Court to review the Ninth Circuit's holding in that case. *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, No. 22-338 (U.S. filed Oct. 7, 2022).

## COUNT II

### Commerce Clause

60.    The preceding paragraphs are incorporated and re-alleged here.

61.    The dormant Commerce Clause provides a "self-executing limitation on state authority to enact laws imposing substantial burdens on interstate commerce even in the absence of Congressional action." *United Egg Producers v. Dep't of Agric. of P.R.*, 77 F.3d 567, 570 (1st Cir. 1996).

62.    The dormant Commerce Clause prohibits California from enforcing a law that "regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2471 (2019); *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986).

63.    The dormant Commerce Clause specifically prohibits "the application of a state statute to commerce that takes places wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336 (1989). When a state directly regulates interstate commerce, it "exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id.*

64.    California's SB793 violates the dormant Commerce Clause because it dictates how out-of-state manufacturers must manufacture their products. By banning characterizing flavors in most tobacco products, California has attempted to dictate how out-of-state manufacturers produce their tobacco products. The law thus directly

1   regulates interstate commerce and exceeds the inherent limits of the Commerce

2   Clause.

3         65.    SB793 also violates the dormant Commerce Clause because it contains

4   exceptions that discriminate against out-of-state businesses, in favor of local

5   businesses.

6         66.    In addition, the ban imposes burdens on out-of-state commerce that are

7   "clearly excessive in relation to the putative local benefits" from the ban. *Pike v.*

8   *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

9         67.    Accordingly, California's law is unenforceable under the Commerce

10   Clause.

11                                 **REQUEST FOR RELIEF**

12         Plaintiffs request that this Court grant the following relief:

13         68.    Pursuant to 28 U.S.C. § 2201, declare that under the Supremacy Clause

14   of the United States Constitution, federal law preempts Senate Bill 793's ban on

15   flavored tobacco products, rendering it invalid and unenforceable.

16         69.    Pursuant to 28 U.S.C. § 2201, declare that Senate Bill 793 is invalid and

17   unenforceable under the Commerce Clause of the United States Constitution.

18         70.    Under Federal Rule of Civil Procedure 65, preliminarily enjoin

19   Defendants and their agents from enforcing or implementing the state's ban on

20   flavored tobacco products;

21         71.    Permanently enjoin Defendants and their agents from enforcing or

22   implementing California's ban on flavored tobacco products;

23         72.    Award Plaintiffs their costs and disbursements associated with this

24   litigation under 28 U.S.C. § 2412 and other applicable authority; and

25         73.    Provide such other relief as the Court deems appropriate.

26

27

28

1

2 Dated: November 9, 2022                    Respectfully submitted,

3                                            JONES DAY

4

5                                            By: */s/ Steven N. Geise*
                                                 Steven N. Geise
6                                                sngeise@jonesday.com

7                                            Noel J. Francisco* (D.C. Bar No. 464752)
                                             Christian G. Vergonis* (D.C. Bar No. 483293)
8                                            Ryan J. Watson* (D.C. Bar No. 986906)
                                             Andrew Bentz* (D.C. Bar No. 1020719)
9                                            JONES DAY
                                             51 Louisiana Ave., N.W.
10                                           Washington, D.C. 20001
                                             Tel: (202) 879-3939
11                                           Fax: (202) 626-1700
                                             * *pro hac* application forthcoming

12                                           *Counsel for Plaintiffs*
                                             R.J. REYNOLDS TOBACCO COMPANY; R.J.
13                                           REYNOLDS VAPOR COMPANY; AMERICAN
                                             SNUFF COMPANY, LLC; SANTA FE
14                                           NATURAL TOBACCO COMPANY, INC.;
                                             MODORAL BRANDS INC.; NEIGHBORHOOD
15                                           MARKET ASSOCIATION, INC.; and MORIJA,
                                             LLC dba VAPIN' THE 619
16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF