Steven N. Geise (SBN 249969)
JONES DAY
sngeise@jonesday.com
4655 Executive Drive
Suite 1500
San Diego, CA 92121
Tel: (858) 314-1200
Fax: (844) 345-3178

*[Additional counsel identified on signature page]*
*Counsel for Plaintiffs*
R.J. Reynolds Tobacco Company; R.J. Reynolds Vapor Company; American Snuff Company, LLC; Santa Fe Natural Tobacco Company, Inc.; Modoral Brands Inc.; Neighborhood Market Association, Inc.; and Morija, LLC dba Vapin' the 619

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>ROBERT BONTA, in his official capacity as Attorney General of California; and SUMMER STEPHAN, in her official capacity as District Attorney for the County of San Diego,<br><br>    *Defendants*. | Case No. 3:22-cv-01755-BEN-MSB<br>Hon. Roger T. Benitez<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND INJUNCTION PENDING APPEAL**<br><br>Hearing Date:   December 12, 2022<br>Time:             10:30 A.M.<br>Courtroom:      5A<br><br>Complaint Filed: November 9, 2022 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................. 2

ARGUMENT ................................................................................. 4

I.    THOUGH PLAINTIFFS' EXPRESS PREEMPTION CLAIM ON
      THE MERITS IS FORECLOSED BY NINTH CIRCUIT
      PRECEDENT, THAT PRECEDENT IS WRONG. ........................... 6

      A.    The Ninth Circuit's interpretation of the TCA's preemption
            clause is wrong. ........................................................ 6

      B.    Even under *Los Angeles County*, SB793 falls under the TCA's
            preemption clause .................................................... 10

      C.    *Los Angeles County* misinterpreted the TCA's savings clause. ......... 11

II.   THE BAN WILL IRREPARABLY HARM PLAINTIFFS. ........................ 15

III.  THE EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFFS. ......... 16

CONCLUSION ................................................................................ 18

# TABLE OF AUTHORITIES

**Page**

CASES

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
  141 S. Ct. 2485 (2021) (per curiam) ................................................................. 15

*Am. Trucking Ass'ns v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ......................................................................... 15

*Arizona v. Atchison, Topeka & Santa Fe R.R.*,
  656 F.2d 398 (9th Cir. 1981) ............................................................................. 5

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ..................................................................................... 14

*Dennis Melancon, Inc. v. City of New Orleans*,
  703 F.3d 262 (5th Cir. 2012) ........................................................................... 15

*Holley v. Cal. Dep't of Corr.*,
  599 F.3d 1108 (9th Cir. 2010) ......................................................................... 16

*Kentucky v. U.S. ex rel. Hagel*,
  759 F.3d 588 (6th Cir. 2014) ........................................................................... 15

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ........................................................................... 17

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ................................................................................... 15, 16

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  138 S. Ct. 617 (2018) ....................................................................................... 14

*Nat'l Meat Ass'n v. Harris*,
  565 U.S. 452 (2012) ..................................................................................... 9, 10

*Neville v. Johnson*,
  440 F.3d 221 (5th Cir. 2006) ......................................................................... 15

*Nken v. Holder*,
  556 U.S. 418 (2009) ....................................................................................... 16

*Puente Ariz. v. Arpaio*,
  821 F.3d 1098 (9th Cir. 2016) ......................................................................... 5

*R.J. Reynolds Tobacco Co. v. Becerra*,
  No. 20-cv-1990, 2021 WL 3472697 (S.D. Cal. Aug. 6, 2021) .................... 1, 4, 5

*R.J. Reynolds Tobacco Co. v. City of Edina*,
  482 F. Supp. 3d 875 (D. Minn. 2020), *appeal pending*, No. 20-2852
  (8th Cir. argued May 12, 2021) .................................................................. 9, 10

*R.J. Reynolds Tobacco Co. v. County of Los Angeles*,
  29 F.4th 542 (9th Cir. 2022), *cert. pending*, No. 22-338 (U.S. filed
  Oct. 7, 2022) ........................................................................................... passim

*Ramos v. Wolf*,
  975 F.3d 872 (9th Cir. 2020) ......................................................................... 16

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) ....................................................................... 17

*Rutherford v. Crosby*,
  438 F.3d 1087 (11th Cir. 2006) ..................................................................... 14

*Shawnee Tribe v. Mnuchin*,
  984 F.3d 94 (D.C. Cir. 2021) ......................................................................... 16

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ......................................................................... 15

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) .................................................................. 15, 16

*Tandon v. Newsom*,
  992 F.3d 916 (9th Cir. 2021) ........................................................................... 5

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) ...................................................................................... 15

*U.S. Smokeless Tobacco Manufacturing Co. v. City of New York*,
   708 F.3d 428 (2d Cir. 2013) ......................................................................... 11

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ...................................................................... 17

*Wilde v. City of Dunsmuir*,
   9 Cal. 5th 1105 (2020) .................................................................................... 4

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................................ 5

*Ysleta Del Sur Pueblo v. Texas*,
   142 S. Ct. 1929 (2022) ...................................................................... 12, 13, 14


**CONSTITUTIONS, STATUTES, AND LEGISLATIVE MATERIALS**

42 U.S.C. § 7543................................................................................................ 8

Cal. Const. art. II, § 10............................................................................. 1, 4, 5

Cal. Const. art. IV, § 8 ....................................................................................... 4

Cal. Elec. Code § 15501 ........................................................................... 1, 4, 5

Cal. Health & Safety Code § 104495 ................................................................ 2

Food, Drug, and Cosmetic Act (FDCA)
   FDCA § 907, 21 U.S.C. § 387g.................................................................. 8, 9
   FDCA § 916, 21 U.S.C. § 387p...........................................................passim

S.B. 793, 2019–2020 Reg. Sess. (Cal. 2020) ......................................... 2, 3, 10

1

## RULES AND REGULATORY MATERIALS

2

3

FDA Decision Summary PM000011 (Nov. 10, 2015)...................................3

4

FDA, *Deeming Tobacco Products*, 81 Fed. Reg. 28,973
(May 10, 2016) ................................................................................17

5

6

FDA, *Illicit Trade in Tobacco Products after Implementation of an
FDA Product Standard* 4 (Mar. 15, 2018) ..........................................9

7

8

FDA, *Modified Risk Granted Orders* (Mar. 11, 2022).............................3

9

FDA, *Tobacco Product Standard for Menthol in Cigarettes*,
87 Fed. Reg. 26,454 (May 4, 2022)......................................................9

10

11

FDA News Release, *FDA Grants First-Ever Modified Risk Orders to
Eight Smokeless Tobacco Products* (Oct. 22, 2019) ............................3

12

13

Fed. R. App. Proc. 8 ................................................................................2

14

15

16

## OTHER AUTHORITIES

17

Cal. Sec'y of State, State Ballot Measures – Statewide Results ...............1

18

*2022 California midterm election: Live results*, L.A. Times ....................1

19

RAI Services Company, *Comment from RAI Services Company*
(Aug. 3, 2022)................................................................................17

20

21

22

23

24

25

26

27

28

MEMO IN SUPPORT OF
PRELIMINARY INJUNCTION
Case No. 3:22-cv-01755-BEN-MSB

**INTRODUCTION**

Plaintiffs move for a preliminary injunction and an injunction pending appeal enjoining enforcement of SB793, 2019–2020 Reg. Sess. (Cal. 2020), California's ban on the retail sale of tobacco products with a characterizing flavor other than tobacco. Because the ban is scheduled to go into effect no later than December 21, 2022, and because this Court is bound by Ninth Circuit precedent to reject this motion, Plaintiffs respectfully request that this Court deny the motion by November 23, 2022 so that Plaintiffs can promptly seek relief on appeal.

Plaintiffs originally challenged SB793 in this Court shortly after the law's enactment in 2020. *See R.J. Reynolds Tobacco Co. v. Becerra*, No. 20-CV-1990 (S.D. Cal. filed Oct. 9, 2020) ("*Becerra*"). While that case was pending, a referendum challenging SB793 qualified for the November 2022 ballot, thereby suspending operation of SB793 unless and until "approved by a majority of voters." *R.J. Reynolds Tobacco Co. v. Becerra*, No. 20-CV-1990, 2021 WL 3472697, at *1 (S.D. Cal. Aug. 6, 2021). This Court therefore dismissed the lawsuit as unripe. *Id.* The election has now occurred and the voters have approved SB793. *See* Cal. Sec'y of State, State Ballot Measures – Statewide Results, https://tinyurl.com/224csfnk (last visited Nov. 10, 2022) (reporting that as of 5:40 p.m. on Nov. 9, 2022, 100% of precincts had partially reported results, and 62.3% of voters approved SB793); *see also 2022 California midterm election: Live results*, L.A. Times, https://tinyurl.com/jdbxbdxw (last visited Nov. 9, 2022) (reporting that SB793 has been approved). SB793 will therefore take effect no later than December 21, 2022. *See* Cal. Const. art. II, § 10(a); Cal. Elec. Code § 15501(b). Once the law takes effect, Plaintiffs will be forced to halt retail sales, and distribution for retail resale, of flavored tobacco products in one of the Nation's largest markets. The case is thus ripe.

Plaintiffs seek a preliminary injunction and an injunction pending appeal because the federal Tobacco Control Act expressly preempts California's flavor ban, Plaintiffs face irreparable harm, and the equities favor an injunction. Nonetheless,

Plaintiffs recognize that, at this time, their express preemption claim is foreclosed by Ninth Circuit precedent and that this Court therefore must deny this motion. *See R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542 (9th Cir. 2022) ("*Los Angeles County*"), *cert. pending*, No. 22-338 (U.S. filed Oct. 7, 2022). Plaintiffs thus acquiesce in the denial of their motion while preserving their arguments for appeal, and respectfully request that this Court rule on this motion no later than November 23, 2022.[1]

Plaintiffs further respectfully move for an injunction pending appeal of this Court's inevitable denial of the motion for a preliminary injunction. *See* Fed. R. App. Proc. 8(a). Plaintiffs recognize, however, that this Court is bound to deny a motion for an injunction pending appeal for the same reason it is bound to deny the motion for a preliminary injunction. Accordingly Plaintiffs likewise acquiesce in the denial of their motion for an injunction pending appeal while preserving their arguments for appeal.

## BACKGROUND

### 1. California Senate Bill 793

SB793 states that tobacco retailers "shall not sell, offer for sale, or possess with the intent to sell or offer for sale, a flavored tobacco product or a tobacco product flavor enhancer." SB793 § 104559.5(b)(1). California defines a "[t]obacco product" as "[a] product containing, made, or derived from tobacco or nicotine that is intended for human consumption," including "cigarettes," "chewing tobacco," "snuff," and e-cigarettes. Cal. Health & Safety Code § 104495(a)(8)(A)(i), (a)(8)(A)(ii).

SB793 defines "[f]lavored tobacco product" as "any tobacco product that contains a constituent that imparts a characterizing flavor." SB793 § 104559.5(a)(4).

---

[1] In a separate, unopposed ex parte application, Plaintiffs request that this Court shorten the briefing schedule for this motion. As explained in that application, the parties have conferred consistent with this Court's rules, and agree that Defendants will file an opposition within 7 days of the filing of this motion and Plaintiffs will file a reply within 2 days after the filing of the opposition.

SB793 defines "[c]haracterizing flavor" as "a distinguishable taste or aroma, or both, other than the taste or aroma of tobacco, imparted by a tobacco product or any byproduct produced by the tobacco product," including "menthol." *Id.* § 104559.5(a)(1). SB793 thus bans tobacco retailers in California from selling nearly any type of tobacco product with a characterizing flavor other than tobacco, including menthol cigarettes or menthol e-cigarettes, and subjects them to criminal penalties. SB793 would ban a flavored product even if FDA has authorized it to be sold after considering whether it is "appropriate for the protection of the public health."[2] And SB793 would ban flavored products even if FDA has authorized manufacturers to market them as presenting lower health risks when compared to using combustible cigarettes.[3] Anyone who violates the law "is guilty of an infraction" and faces a $250 fine per violation. *Id.* § 104559.5(f).

SB793 will ban Plaintiffs from selling and distributing many of their products within California. Plaintiffs R.J. Reynolds Tobacco Company, R.J. Reynolds Vapor Company, American Snuff Company, LLC, Santa Fe Natural Tobacco Company, Inc., and Modoral Brands Inc. (collectively, "Reynolds") manufacture numerous "[f]lavored tobacco product[s]," including menthol cigarettes, menthol-flavored e-cigarettes, various flavored smokeless tobacco products, and other flavored tobacco products (such as pouches and lozenges with nicotine), that they distribute for resale to consumers within California. Silva Decl. ¶¶ 6–7 (filed concurrently); Canary-Garner Decl. ¶¶ 4–5 (same). Retailer Vapin' the 619 and members of the Neighborhood Market Association sell "flavored tobacco product[s]." Sylvester Decl. ¶¶ 1–4 (same); Mansour Decl. ¶ 5 (same). Plaintiffs would continue to sell and

---

[2]   *E.g.*, FDA Decision Summary PM000011 (Nov. 10, 2015), https://tinyurl.com/mw56k4ps (authorizing a mint snus product).

[3] *E.g.*, FDA News Release, *FDA Grants First-Ever Modified Risk Orders to Eight Smokeless Tobacco Products* (Oct. 22, 2019) (authorizing marketing of eight flavored snus products as having "a lower risk [than cigarettes] of" certain diseases), https://tinyurl.com/y6ruvbdz; *see also* FDA, *Modified Risk Granted Orders* (Mar. 11, 2022), https://tinyurl.com/y2bvbzxv.

distribute these products for resale in California but for SB793.

**2. Procedural History**

SB793 was enacted on August 28, 2020, and was originally set to go into effect on January 21, 2021.

Plaintiffs (and others) sued in this Court to invalidate SB793. *Becerra*, 2021 WL 3472697, at *1. While that case was pending, a referendum challenging the law qualified for the November 8, 2022 ballot, *see* Proposition 31, https://tinyurl.com/2s3v32z8 (last visited Nov. 8, 2022), thereby suspending operation of SB793 unless and until "approved by a majority of voters." *Wilde v. City of Dunsmuir*, 9 Cal. 5th 1105, 1111 (2020); *see also* Cal. Const. art. IV, § 8(c)(2). This Court dismissed that case as unripe, explaining that because Proposition 31 had qualified for the ballot, SB793 "will never be enforceable against Plaintiffs (or anyone) if it does not survive the referendum set to go forward on November 8, 2022." *Becerra*, 2021 WL 3472697, at *1. The injury Plaintiffs faced from SB793 was thus "contingent on the outcome of the referendum." *Id.* at *1–2.

November 8, 2022, has now come and gone. At the ballot box, voters approved SB793. *See supra* p.1. SB793 will therefore now take effect five days after the Secretary of State certifies the results. *See* Cal. Const. art. II, § 10(a). And certification must occur by December 16, 2022. Cal. Elec. Code § 15501(b). Thus, SB793 will be enforceable no later than December 21, 2022. Accordingly, Plaintiffs will soon be forced to halt sales and distribution of flavored tobacco products in California.

## ARGUMENT

This case is now ripe for adjudication and, but for the Ninth Circuit's 2-1 decision in *Los Angeles County*, 29 F.4th 542, Plaintiffs would be entitled to a preliminary injunction and an injunction pending appeal.

*First*, this case is now ripe because there is no doubt that SB793 will take effect by no later than December 21, 2022. This Court previously dismissed a challenge to

SB793 after a referendum temporarily suspended operation of SB793. *Becerra*, 2021 WL 3472697, at *1. But now that voters have approved SB793, *see supra* p.1, it will go into effect five days after the Secretary of State certifies the election results, which must occur by December 16, 2022. Cal. Const. art. II, § 10(a); Cal. Elec. Code § 15501(b). Thus, absent judicial intervention, SB793 will be enforceable, and therefore harm Plaintiffs, no later than December 21, 2022. *See Arizona v. Atchison, Topeka & Santa Fe R.R.*, 656 F.2d 398, 402–03 (9th Cir. 1981) (challenge to statute ripe before its effective date).

*Second*, but for the Ninth Circuit's decision in *Los Angeles County*, this would be a quintessential case warranting preliminary injunctive relief. A plaintiff is entitled to a preliminary injunction if (1) "he is likely to succeed on the merits," (2) he "is likely to suffer irreparable harm" absent preliminary relief, (3) "the balance of equities tips in his favor," and (4) an "injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's "sliding scale" test, injunctive relief is also appropriate where the plaintiff raises "serious questions" as to the merits and "the balance of hardships tips sharply in [plaintiff's] favor." *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1103 n.4 (9th Cir. 2016). The standard is the same for an injunction pending appeal. *See Tandon v. Newsom*, 992 F.3d 916, 919 (9th Cir. 2021)

As to the merits, the federal Tobacco Control Act ("TCA") preempts state laws (like SB793) that regulate the flavors that manufacturers can add to tobacco products, and does not save from preemption laws (like SB793) prohibiting the sale of such products. 21 U.S.C. § 387p(a). Moreover, Plaintiffs here satisfy the other factors for a preliminary injunction. Without an injunction, Plaintiffs and numerous Californians will face serious, uncompensable injuries. For example, if SB793 goes into effect, Vapin' the 619 will likely have to close shop completely and lay off its employees. Many members of NMA are in the same boat. In addition, Modoral, which manufactures only flavored tobacco products, will be entirely cut off from one of the

Nation's largest markets. And other Reynolds entities will need to spend tens of millions of dollars to compete for former users of their flavored products who do not wish to stop using tobacco products. None of these injuries can be compensated with monetary damages given California's sovereign immunity. By contrast, the State will suffer little or no harm from a preliminary injunction or injunction pending appeal because it would merely maintain the status quo temporarily.

The plaintiffs in *Los Angeles County* (including several Plaintiffs in this case) have sought Supreme Court review of that decision. And Plaintiffs here preserve their express preemption claim for appellate review. Plaintiffs recognize, however, that absent further direction from the Supreme Court, this Court is bound by *Los Angeles County* to reject the merits of their express preemption claim and therefore to deny the motion for a preliminary injunction and injunction pending appeal. Plaintiffs request that this Court do so promptly—but no later than November 23, 2022—so that Plaintiffs can seek relief from a higher court.

## I.   THOUGH PLAINTIFFS' EXPRESS PREEMPTION CLAIM ON THE MERITS IS FORECLOSED BY NINTH CIRCUIT PRECEDENT, THAT PRECEDENT IS WRONG.

Plaintiffs recognize that their express preemption claim is foreclosed in this Court by *Los Angeles County*, 29 F.4th 542. To preserve their arguments for appellate review, Plaintiffs explain below that (i) the Ninth Circuit's interpretation of the TCA's preemption clause is incorrect, (ii) SB793 falls within the TCA's preemption clause even under the Ninth Circuit's erroneous decision, and (iii) the Ninth Circuit's alternative holding concerning the TCA's savings clause is likewise incorrect.

### A.   The Ninth Circuit's interpretation of the TCA's preemption clause is wrong.

Under the federal Tobacco Control Act, states and localities have broad authority to regulate the sale of tobacco products. They can raise the minimum purchase age, restrict sales to particular times and locations, and enforce licensing

MEMO IN SUPPORT OF
PRELIMINARY INJUNCTION
Case No. 3:22-cv-01755-BEN-MSB

regimes. But one thing they cannot do is completely prohibit the sale of those products for failing to meet state or local "tobacco product standards." That is because the TCA's preemption clause specifically denies states and localities the power to enact "*any*" "requirement which is different from, or in addition to," federal "tobacco product standards." 21 U.S.C. § 387p(a)(2)(A) (emphasis added). Despite that clause, however, the Ninth Circuit held that a state or locality can evade preemption by simply framing its law as a ban on the sale of products that do not meet the state or local standard. *Los Angeles County*, 29 F.4th at 542.

That decision was wrong. Indeed, as Judge Nelson's dissent in *Los Angeles County* noted, "[i]n the last two decades, the Supreme Court has twice reversed [the Ninth Circuit] for failing to find California regulations expressly preempted." *Id.* at 562 (Nelson, J., dissenting) (citing first *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004); and then *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452 (2012)).

**1.** The TCA's preemption clause preempts "*any*" local "requirement which is different from, or in addition to," federal "tobacco product standards." 21 U.S.C. § 387p(a)(2)(A) (emphasis added). Nonetheless, the Ninth Circuit held that as long as a local law enforcing such a requirement is framed as a sales ban, the local law is not preempted. The court explained that Los Angeles's Ordinance was "merely banning the *sale* of a certain type of tobacco product, not dictating how that product must be *produced*." 29 F.4th at 556 (emphasis added). That, in the Ninth Circuit's view, was dispositive, because "tobacco product standards" do not include sales regulations or prohibitions.

The Ninth Circuit's holding conflicts with the Supreme Court's repeated admonition that states and localities cannot evade preemption by simply enforcing their standards at the point of sale. In *Engine Manufacturers*, the Court rejected the Ninth Circuit's atextual limitation on such a preemption clause. There, California prohibited the purchase of cars that did not meet local emission standards. 541 U.S.

at 248–49. The Clean Air Act, however, expressly preempted states from adopting "*standard[s]* relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a) (emphasis added). California argued that a "standard" was only "a 'production mandate'" applicable to manufacturers; thus, the *purchase* requirement was not preempted. 541 U.S. at 254–55. But the Court specifically rejected that attempt to "engraft onto th[e] meaning of 'standard' a limiting component" found nowhere in the statutory text. *Id.* at 253. Instead, looking to the dictionary definition of "standard," the Court concluded that a "standard" applies to the final product, not simply how it is made. *Id.* Standards "target" the product itself, which means preempted "standard-enforcement efforts … can be directed to manufacturers or purchasers." *Id.* In other words, "a standard is a standard even when not enforced through manufacturer-directed regulation." *Id.* at 254.

The same is true when it comes to "tobacco product standards." A tobacco product *standard* applies to the final product, not simply to how the product is made. *See* 21 U.S.C. § 387g(a)(4)(B)(i). A sales ban and a manufacturing ban are just different ways of enforcing a standard. In either case, what is being enforced is a *standard* (no flavors in tobacco products). The Ninth Circuit's conclusion that tobacco product standards in the TCA are limited to production regulations is thus irreconcilable with *Engine Manufacturers*.

It is also irreconcilable with the TCA's plain text. The TCA specifically says that tobacco product standards can govern a tobacco product's "properties," "constituents," and "additives." *Id.* § 387g(a)(4)(B)(i). Those words likewise refer to the final product—*not* merely the production of the product. In other words, a tobacco product standard governs *what* may be produced, not just *how* it may be produced.

Indeed, the TCA makes it patently clear that the type of law at issue here (and in *Los Angeles County*)—a ban on flavored tobacco products—is a paradigmatic "tobacco product standard." One of only two tobacco product standards in the Act is a ban on flavored cigarettes (other than tobacco and menthol). *Id.* § 387g. Moreover,

the statute also expressly describes "tobacco product standards" as encompassing "provisions respecting the construction, components, *ingredients, additives, constituents, … and properties* of the tobacco product," *id.* § 387g(a)(4)(B)(i) (emphasis added)—which plainly covers the regulation of flavors. *See, e.g.*, *R.J. Reynolds Tobacco Co. v. City of Edina*, 482 F. Supp. 3d 875, 879 (D. Minn. 2020) ("[T]here can be no dispute that a provision respecting the flavor of a tobacco product is a provision respecting a 'propert[y]' of that product."), *appeal pending*, No. 20-2852 (8th Cir. argued May 12, 2021).[4]

Thus, the Ninth Circuit's artificial limitation of "tobacco product standards" not only conflicts with *Engine Manufacturers* but also the text of the TCA itself.

**2.** Even if tobacco product standards were somehow limited to production mandates (they are not), the Ninth Circuit's decision conflicts with *National Meat*, 565 U.S. 452. In *National Meat*, California banned slaughterhouses from selling meat from animals that could not walk. Manufacturers argued that the Federal Meat Inspection Act (FMIA) preempted California's law. That Act prohibited states from adopting "[r]equirements … with respect to premises, facilities and operations of any establishment … which are in addition to, or different than those made under [the FMIA]." *Id.* at 458. Unlike here, this preemption provision was in fact textually limited to production mandates. And like Los Angeles County argued, California argued in *National Meat* that its rule was not preempted because it regulated sales, not manufacturing. *Id.* at 463.

The Supreme Court, however, unanimously rejected the argument. "[I]f the

---

[4] FDA too has repeatedly concluded that restrictions on flavors—including sales bans—are tobacco product standards. *See* FDA, *Tobacco Product Standard for Menthol in Cigarettes*, 87 Fed. Reg. 26,454, 26,456 (May 4, 2022) (invoking its "authorities to revise or issue tobacco product standards" to propose a rule, titled "Tobacco Product Standard for Menthol in Cigarettes," which would prohibit menthol-flavored cigarettes); FDA, *Illicit Trade in Tobacco Products after Implementation of an FDA Product Standard* 4 (Mar. 15, 2018) (explaining FDA was "considering establishing a product standard prohibiting the manufacture, *sale*, and distribution of tobacco products with certain characterizing flavors" (emphasis added)).

sales ban were to avoid the FMIA's preemption clause, then any State could impose any regulation on slaughterhouses just by framing it as a ban on the sale of meat produced in whatever way the State disapproved. That would make a mockery of the FMIA's preemption provision." *Id.* at 464.

So too here. "[E]ven if it were necessary to show a direct ban on [production], [California's] Ordinance is in effect such a ban. There is little difference between the government telling a manufacturer that it may not add an ingredient that imparts a flavor to a tobacco product and the government telling a manufacturer that it may not sell a tobacco product if it has added an ingredient that imparts a flavor." *Edina*, 482 F. Supp. 3d at 879 (citing *Nat'l Meat*, 565 U.S. at 464). In that way, California's ban does regulate how tobacco products must be produced.  *Id.*

### B.  Even under *Los Angeles County*, SB793 falls under the TCA's preemption clause.

Even under *Los Angeles County*'s (erroneous) interpretation of the TCA's preemption clause, SB793 qualifies as a preempted tobacco product standard (though Plaintiffs recognize that under *Los Angeles County*, SB793 would nonetheless be saved by the TCA's savings clause, *see infra* Part I.C.). The Ninth Circuit interpreted "tobacco product standards" to be limited to requirements dictating "how [a] product must be produced." 29 F.4th at 556. That is incorrect for the reasons discussed above. But even under that interpretation, SB793 falls squarely within the preemption clause, because SB793 indisputably reaches into and regulates how "flavored tobacco products" must be produced. SB793 bans "[f]lavored tobacco products." SB793 § 104559.5(b). SB793 defines "flavored tobacco product" as a product that "contains a *constituent* that imparts a characterizing flavor." *Id.* § 104559.5(a)(4) (emphasis added). And SB793 in turn defines a "[c]onstituent" as "any ingredient, substance, chemical, or compound … *that is added by the manufacturer* … during the processing, manufacture, or packing of the tobacco product." *Id.* § 104559.5(a)(2) (emphasis added).

In other words, SB793 only applies to products where a manufacturer adds flavor as part of the manufacturing process. That clearly tells manufacturers how to produce their products. Thus, even under the Ninth Circuit's interpretation of the TCA, SB793 falls under the TCA's preemption clause.

*Los Angeles County* looked to the Second Circuit's decision in *U.S. Smokeless Tobacco Manufacturing Co. v. City of New York*, 708 F.3d 428, 434–35 (2d Cir. 2013). And that court explicitly said that a law that regulates manufacturing (such as SB793) would fall under the TCA's preemption clause. The Second Circuit explained:

> The line between regulating the sale of a finished product and establishing product standards will not always be easy to draw. Any finished product can be described in terms of its components or method of manufacture. "Flavored tobacco products" are no exception, and can arguably be described *either* [1] *as a category of finished product or* [2] *as products that are manufactured with ingredients that impart a flavor.*

*Id.* (emphasis added). There the Second Circuit upheld New York City's law only because it fell within the first category: "Whether a product is governed by [New York City's law] depends on its characteristics as an end product, and not on whether it was manufactured in a particular way or with particular ingredients." *Id.* at 435. SB793, in contrast, expressly turns on how the product is manufactured and therefore falls within the Second Circuit's second, preempted category. As a result, SB793 falls under the TCA's preemption clause even under the reasoning of the Second Circuit and *Los Angeles County*.

### C. *Los Angeles County* misinterpreted the TCA's savings clause.

Even if SB793 falls under the TCA's preemption clause as interpreted by *Los Angeles County*, *Los Angeles County*'s alternative holding concerning the scope of the savings clause would still bind this Court on merits of Plaintiffs' express-preemption claim. But *Los Angeles County*'s interpretation of the savings clause is also incorrect. The TCA distinguishes between requirements "relating to" the sale of tobacco products, on the one hand, and requirements "prohibiting" their sale, on the

other. *Id.* § 387p(a)(1). The savings clause saves the first type of requirement, but not the second, and so does not save the State's absolute ban. 21 U.S.C. § 387p(a)(2)(B). The Ninth Circuit's contrary conclusion renders the preemption clause a complete nullity, which defies *Engine Manufacturers* and *National Meat*. The interpretation also fails to give effect to Congress's explicit distinction between requirements "relating to" the sale of tobacco products and requirements "prohibiting" their sale. That conflicts with the Supreme Court's decision in *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929 (2022).

**1.** In *Ysleta*, the Supreme Court held that the words "regulations" and "prohibitions" must be given independent meaning, especially when used in the same statute. 142 S. Ct. at 1938. *Ysleta* interpreted the Restoration Act's bar on Indian Tribes' offering "gaming activities which are prohibited by the laws of … Texas." *Id.* at 1935 (quoting 101 Stat. 668). Texas argued that this provision subjected Tribes to all Texas gaming *regulations* (not just the outright prohibitions). The Court rejected that reading, relying on a separate provision of the Act that says the Act is not a "grant of civil or criminal regulatory jurisdiction to … Texas." *Id.* at 1935–36 (quoting 101 Stat. at 669).

"Perhaps the most striking feature about [the Act's] language," the Court reasoned, "is its dichotomy between prohibition and regulation." *Id.* at 1938. "[T]o prohibit something means to 'forbid,' 'prevent,' or 'effectively stop' it …." *Id.* (quoting *Webster's Third Int'l Dictionary* 1813 (1986)). By contrast, "to regulate something is usually understood to mean to 'fix the time, amount, degree, or rate' of an activity 'according to rule[s].'" *Id.* (quoting *Webster's Third* 1913). "Frequently, then, the two words are 'not synonymous.'" *Id.* (quoting *Black's Law Dictionary* 1212 (6th ed. 1990)). The Court further highlighted its "usual presumption that 'differences in language like this convey differences in meaning.'" *Id.* at 1939 (quoting *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017)). And *Ysleta* emphasized that a construction that renders "regulations simultaneously

1   both (permissible) prohibitions and (impermissible) regulations" had to be rejected.

2   *Id.* Accordingly, laws that "merely regulate[]" gaming do not apply to the Tribe. *Id.*

3   at 1937.

4       **2.** The Ninth Circuit's interpretation of the TCA—that it saves sales

5   prohibitions—conflicts with *Ysleta*. Foremost, the savings clause only saves

6   "requirements relating to the sale" of tobacco products. 21 U.S.C. § 387p(a)(2)(B).

7   Under *Ysleta*, that cannot include prohibitions, since the TCA's text explicitly

8   distinguishes between requirements "relating to the sale" and requirements

9   "prohibiting the sale."

10      The TCA's preservation clause provides: "Except as provided in [the

11  preemption clause], nothing [in the TCA] shall be construed to limit the authority of"

12  state and local governments, federal agencies, the military, and Indian tribes, "to

13  enact … any law … with respect to tobacco products that is in addition to, or more

14  stringent than, requirements established under [the TCA], including a law … *relating*

15  *to or prohibiting* the sale, distribution, [or] possession" of "tobacco products by

16  individuals of any age." *Id.* § 387p(a)(1) (emphasis added). It thus gives state and

17  local governments, federal agencies, the military, and Indian tribes broad authority,

18  including the authority to adopt requirements "relating to *or* prohibiting" the sale of

19  tobacco products. But as its text also makes clear, it is subject to the exception set

20  forth in the preemption clause.

21      The preemption clause, then, takes away from state and local governments (but

22  not others) part of the broad power conferred by the preservation clause. Under the

23  preemption clause, state and local governments cannot enact "*any requirement* which

24  is different from, or in addition to," federal tobacco product standards. *Id.*

25  § 387p(a)(2)(A) (emphasis added). The capacious phrase "any requirement" sweeps

26  in both requirements "relating to" and "prohibiting" the sale of tobacco products—

27  both are preempted if they are "different from, or in addition to," federal tobacco

28  product standards.

13

Finally, the savings clause restores only part of what the preemption clause takes away. It says the preemption clause "does not apply to requirements *relating to the sale*" of tobacco products. *Id.* § 387p(a)(2)(B) (emphasis added). But absent is any reference to the power to impose requirements "*prohibiting* the sale" of tobacco products—meaning that state and local governments still lack that power.

Congress's decision to use "relating to or prohibiting" sales in the preservation clause, but to omit "or prohibiting" from the nearly identical phrase in the savings clause, shows that Congress deliberately excluded sales prohibitions from the class of non-preempted laws in the savings clause. Congress generally "acts intentionally and purposely" when it "includes particular language in one section of a statute but omits it in another." *Collins v. Yellen*, 141 S. Ct. 1761, 1782 (2021). And "[c]ourts are required to give effect to Congress' express inclusions and exclusions." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018).

The only way to reconcile the TCA's preemption-related clauses is to recognize that while local governments have broad authority to regulate the sales process, one thing they may not do is absolutely prohibit the sale of products that fail to meet their preferred product standards. The Ninth Circuit's contrary reading renders the TCA "a jumble." *Ysleta*, 142 S. Ct. at 1939. And it leaves the preemption clause with "no work to perform, its terms dead letters all." *Id.*; *see also supra* Part I.A.1., I.A.2. (explaining that this interpretation also conflicts with *Engine Manufacturers* and *National Meat*).

\*   \*   \*

Thus, under the correct interpretation of the TCA and the Supreme Court's express preemption precedents, Plaintiffs are likely to prevail on the merits. Plaintiffs preserve this argument on the merits for further appellate review. Because of the Ninth Circuit's contrary decision in *Los Angeles County*, though, Plaintiffs recognize that, absent further direction from the Supreme Court, this Court must deny the motion for a preliminary injunction and injunction pending appeal. *Rutherford v.*

*Crosby*, 438 F.3d 1087, 1093 (11th Cir. 2006) (refusing to grant injunction in light of circuit precedent even though Supreme Court was considering the merits of the claim in another case); *Neville v. Johnson*, 440 F.3d 221, 222 (5th Cir. 2006) (same).

## II.    THE BAN WILL IRREPARABLY HARM PLAINTIFFS.

Preliminary injunctive relief requires irreparable injury, "irrespective of the magnitude of the injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999); *see also Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (courts "have long recognized" that when, as here, "the threatened harm is more than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of" temporary relief); *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014) ("a loss for which there is no remedy" because of sovereign immunity is "an irreparable harm"). First, the inability to recover monetary damages because of sovereign immunity typically renders the harm suffered irreparable. *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam) (irreparable harm where "no guarantee of eventual recovery for financial harm"). That is why "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and concurring in the judgment). Further, unlawful government enforcement action can do irreparable injury to a business's goodwill and reputation. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). Finally, being forced to comply with an unconstitutional law is by definition irreparable harm. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (irreparable harm when government enforces a preempted law); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (similar).

Here, Plaintiffs stand to suffer these three distinct forms of irreparable harm.

*First*, SB793 will cause Plaintiffs substantial, unrecoverable financial losses. Vapin' the 619 will likely have to close up shop completely and lay off its employees.

Sylvester Decl. ¶¶ 7–8. Numerous other retailers in the NMA face the same fate. Mansour Decl. ¶ 7. Moreover, Modoral, which exclusively manufactures "flavored tobacco products," will be cut off from one of the largest markets in the United States and thereby lose substantial revenue. *See* Canary-Garner Decl. ¶ 8. And other Reynolds entities will have to spend tens of millions of dollars to compete for former users of their flavored products who do not wish to stop using tobacco products. Canary-Garner Decl. ¶ 7; Silva Decl. ¶ 9. These financial injuries are irreparable because money damages are unavailable for preemption-based claims under § 1983 and the TCA, *see Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010), so Plaintiffs would not be able to obtain compensation for their significant, ongoing losses if this Court (or a higher court) were to invalidate California's law.

*Second*, Plaintiffs stand to lose customer goodwill and suffer harm to their reputation as a result of California's absolute ban of products they either manufacture or sell, which cannot be compensated for through monetary damages (even if sovereign immunity did not separately bar recovery of monetary damages in this case). Silva Decl. ¶ 9; Canary-Garner Decl. ¶ 9; *see also Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841.

*Third*, because California's law is preempted, it is invalid under the Supremacy Clause and therefore unconstitutional. *See supra* Part I. Being forced to comply with such an unconstitutional law constitutes irreparable harm per se. *See Morales*, 504 U.S. at 381.

## III.   THE EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFFS.

Where, as here, "the Government is the opposing party," the last two factors "merge": the government's interest is the public interest. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 103 (D.C. Cir. 2021). Here, those merged factors weigh decisively in favor of preliminary relief.

Foremost, the primary purpose of preliminary injunctive relief is preservation of the status quo. *See Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020). Staying

SB793's effect will preserve the status quo that has existed for decades. A small delay of a controversial and unconstitutional law will not cause the state any harm. Moreover, the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). And since SB793 is preempted, it is unlawful and should not go into effect.

The public interest also favors a stay. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). It is also in the public interest to prevent the state from violating federal law. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). The balance of harms thus strongly supports a stay. Abruptly banning flavored tobacco products from the market while a petition for certiorari regarding the dispositive legal question is pending would harm the hundreds of thousands of adult tobacco users who use such products (and which Congress and FDA have allowed to remain on the market) and the companies like Plaintiffs who manufacture and sell those products.

Moreover, as FDA has recognized, there is already a widespread illicit trade in tobacco products. *See* FDA, *Deeming Tobacco Products*, 81 Fed. Reg. 28,973, 29,007 (May 10, 2016). If consumers cannot obtain flavored tobacco products from reputable establishments because of California's ban, they may well try to obtain them from illicit sources. Not only could an increased illicit trade present potential risks to consumers, but it would almost certainly lead to an increase in associated crimes. Scientific studies and the experiences of other countries that have banned flavored tobacco products confirm as much. *See* RAI Services Company, *Comment from RAI Services Company* 83–101 (Aug. 3, 2022), https://www.regulations.gov/comment/FDA-2021-N-1349-175111 (discussing the risks of an increased illicit trade based on FDA's proposed federal ban of menthol as a characterizing flavor in cigarettes).

The ban could also cause significant negative consequences for vulnerable

populations, including communities of color, and especially African Americans. *See id.* at 102–18. Because African American smokers overwhelmingly prefer menthol cigarettes, California's ban would disproportionately harm African Americans, including by exposing them to negative encounters with law enforcement. *See id.* at 102–07 (discussing how FDA's proposed menthol ban will disproportionately harm African Americans).

SB793 also may cause consumers to engage in risky product tampering and self-mentholation, given the relative ease of converting regular cigarettes to mentholated cigarettes and the ready availability of products suitable for mentholating cigarettes. *See id.* at 118–20. Moreover, because SB793 will severely restrict the availability of menthol-flavored cartridge-based electronic nicotine delivery system products, adults who use those products may turn to combustible cigarettes. *See id.* at 79–82. And the ban may cause consumer confusion regarding the risks of tobacco products, potentially leading to more use of non-flavored tobacco products because consumers will naturally interpret that action as implying that flavored products are especially risky (as compared with non-flavored products that remain on the market), *see id.* at 122–28. Add to that the broader economic costs—to tobacco growers, wholesalers, and those whom they employ, as well as to state and federal tax revenues—and it is clear that the public interest favors a stay.

## CONCLUSION

Plaintiffs acquiesce in the denial of their motion for a preliminary injunction in light of binding circuit precedent, but preserve their express preemption claim for further appellate review. Plaintiffs also acquiesce in the denial of an injunction pending appeal for the same reasons and with the same reservation. Plaintiffs request that this Court rule on this motion no later than November 23, 2022.

Dated: November 10, 2022

Respectfully submitted,

JONES DAY

By: /s/ *Steven N. Geise*
     Steven N. Geise
     sngeise@jonesday.com

Noel J. Francisco* (D.C. Bar No. 464752)
Christian G. Vergonis* (D.C. Bar No. 483293)
Ryan J. Watson* (D.C. Bar No. 986906)
Andrew Bentz* (D.C. Bar No. 1020719)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
* admitted *pro hac vice*

*Counsel for Plaintiffs*
R.J. REYNOLDS TOBACCO COMPANY;
R.J. REYNOLDS VAPOR COMPANY;
AMERICAN SNUFF COMPANY, LLC;
SANTA FE NATURAL TOBACCO
COMPANY, INC.; NEIGHBORHOOD
MARKET ASSOCIATION, INC.; and
MORIJA, LLC dba VAPIN' THE 619

19