1  ROB BONTA
   Attorney General of California
2  JAMES V. HART, State Bar No. 278763
   Supervising Deputy Attorney General
3  PETER F. NASCENZI, State Bar No. 311664
   TAYLOR ANN WHITTEMORE, State Bar No. 320343
4  Deputy Attorneys General
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-7805
     Fax: (916) 327-2319
7    E-mail: Peter.Nascenzi@doj.ca.gov
   *Attorneys for Defendant*
8  *Rob Bonta, in his official capacity as*
   *Attorney General of California*
9
                    IN THE UNITED STATES DISTRICT COURT
10
                   FOR THE SOUTHERN DISTRICT OF CALIFORNIA
11

12

13

14  **R.J. REYNOLDS TOBACCO**              3:22-cv-01755-CAB-WVG
    **COMPANY; R.J. REYNOLDS**
15  **VAPOR COMPANY; AMERICAN**
    **SNUFF COMPANY LLC; SANTA**
16  **FE NATURAL TOBACCO**                 **DEFENDANT ATTORNEY**
    **COMPANY, INC.; MODORAL**            **GENERAL BONTA'S**
17  **BRANDS INC.; NEIGHBORHOOD**         **MEMORANDUM OF POINTS AND**
    **MARKET ASSOCIATION, INC.;**         **AUTHORITIES IN SUPPORT OF**
18  **and MORIJA, LLC dba Vapin the**     **MOTION TO DISMISS**
    **619,**
19                                         Date:        February 24, 2023
                           Plaintiffs,     Time:        N/A
20                                         Courtroom:   15A
         v.                                Judge:       The Honorable Cathy Ann
21                                                      Bencivengo
                                           Trial Date:  N/A
22  **ROBERT BONTA, in his official**      Action Filed: 11/09/2022
    **capacity as Attorney General of**
23  **California; and SUMMER**
    **STEPHAN, in her official capacity as**
24  **District Attorney for the County of**
    **San Diego,**
25
                           Defendants.
26

27

28

---

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................1

Legal Standard ...............................................................................................3

Background......................................................................................................3

Argument .......................................................................................................5

    I.     Binding Ninth Circuit Precedent Requires Dismissal of Plaintiffs' Preemption Claim...................................................5

    II.    S.B. 793 Is Fully Consonant With the Commerce Clause .................6

        A.    Plaintiffs' First Theory.........................................8

        B.    Plaintiffs' Second Theory ....................................9

        C.    Plaintiffs' Third Theory .....................................10

        D.    The TCA saves S.B. 793 from any dormant Commerce Clause challenge ..................................................13

Conclusion.....................................................................................................13

i

Def. Bonta's Mem. P. & A. Supp. Mot. Dismiss (3:22-cv-01755-CAB-WVG)

# TABLE OF AUTHORITIES

Page

CASES

*Abagninin v. AMVAC Chem. Corp.*
   545 F.3d 733 (9th Cir. 2008)...............................................................................3

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)...........................................................................................3

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Bonta*
   33 F.4th 1107 (9th Cir. 2022) (*Ass'n des Eleveaurs de Canards II*) ..................7

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
   729 F.3d 937 (9th Cir. 2013) (*Ass'n des Eleveaurs de Canards I*)..........8, 10, 11

*Balistreri v. Pacifica Police Dep't*
   901 F.2d 696 (9th Cir. 1988).............................................................................3

*Chinatown Neighborhood Ass'n v. Harris*
   794 F.3d 1136 (9th Cir. 2015)...............................................................*passim*

*Hart v. Massanari*
   266 F.3d 1155 (9th Cir. 2001)............................................................................6

*Indeps. Gas & Serv. Stations Ass'ns v. City of Chicago*
   112 F. Supp. 3d 749 (N.D. Ill. 2015)..................................................................2

*Maine v. Taylor*
   477 U.S. 131 (1986)............................................................................................7

*Minnesota v. Clover Leaf Creamery Co.*
   449 U.S. 456 (1981)..........................................................................................11

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
   682 F.3d 1144 (9th Cir. 2012)...........................................................................7

*Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence*
   731 F.3d 71 (1st Cir. 2013) ...............................................................................2

*Nat'l Pork Producers Council v. Ross*
   6 F.4th 1021 (9th Cir. 2021)..............................................................................8

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*
   511 U.S. 93 (1994)..................................................................................6

*R.J. Reynolds Tobacco Co. v. City of Edina*
   482 F. Supp. 3d 875 (D. Minn. 2020)....................................................2

*R.J. Reynolds Tobacco Co. v. County of Los Angeles*
   29 F.4th 542 (9th Cir. 2022)...............................................2, 6, 8, 13

*Rocky Mtn. Farmers Union v. Corey*
   730 F.3d 1070 (9th Cir. 2013) (*Rocky Mtn. I*) ................................7, 9

*Rocky Mtn. Farmers Union v. Corey*
   913 F.3d 940 (9th Cir. 2019) (*Rocky Mtn. II*)...............................9, 13

*S.-Cent. Timber Dev., Inc. v. Wunnicke*
   467 U.S. 82 (1984)................................................................................13

*Sam Francis Found. v. Christies, Inc.*
   784 F.3d 1320 (9th Cir. 2015)..............................................................8

*South Dakota v. Wayfair, Inc.*
   138 S. Ct. 2080 (2018).........................................................................7

*U.S. Smokeless Tobacco Mfg. Co. v. City of New York*
   708 F.3d 428 (2d Cir. 2013).................................................................2

*UFO Chuting of Haw., Inc. v. Smith*
   508 F.3d 1189 (9th Cir. 2007)..............................................................7

*Wilde v. City of Dunsmuir*
   9 Cal. 5th 1105 (2020) ........................................................................4

## STATUTES

Family Smoking Prevention and Tobacco Control Act
   Pub. L. No. 111-31, 123 Stat. 1776 (2009).........................................6
   § 2(14), 21 U.S.C. § 387 note.............................................................12
   § 916(a)(1), 21 U.S.C. § 387p(a)(1) ..................................................13

S.B. 793, Act of Aug. 28, 2020, Chapter 34, 2020 Cal. Stat. 1743 ..........3

Page

Cal. Health & Safety Code
    § 104559.5(a)(1) ...............................................................3, 4, 8
    § 104559.5(a)(4) ......................................................................3
    § 104559.5(b)(1) ...................................................................3, 10
    § 104559.5(c) ...........................................................................9
    § 104559.5(d) ..........................................................................9
    § 104559.5(e) ...........................................................................9

CONSTITUTIONAL PROVISIONS

Cal. Const. Article II, § 9(a) .......................................................4

Cal. Const. Article II, § 10(a) .....................................................4

U.S. Const., Article I, § 8, cl. 3 ..................................................6

COURT RULES

Fed. R. Civ. P. 8(a) ..................................................................3

Fed. R. Civ. P. 12(b)(6) ............................................................3

OTHER AUTHORITIES

Cal. S. Comm. on Health, Report on Flavored Tobacco Products (May
    11, 2020), https://tinyurl.com/bmu8e885 ..............................11, 12

Cal. S. Rules Comm., Senate Floor Analysis for SB 793 (Aug. 25,
    2020), https://tinyurl.com/bmu8e885 ........................................1

Cal. Sec'y of State, Statement of the Vote (2022),
    https://tinyurl.com/59aur6mu ................................................2, 4

CDC, *Health Effects of Cigarette Smoking* (Oct. 29, 2021),
    https://tinyurl.com/3zbj4kwe ..................................................12

CDC, Youth and Tobacco Use (Nov. 10, 2022),
    https://tinyurl.com/mr3rnxey ..................................................12

# TABLE OF AUTHORITIES
## (continued)

Page

Monica E. Cornelius, et al., *Tobacco Product Use Among Adults-United States 2020*, 71 MORB. MORTAL. WKLY. REP. 397 (2022), https://tinyurl.com/49t4e4uk ...........................................................................12

Press Release, Office of State Sen. Jerry Hill, California Senate Passes SB 793 (June 25, 2020), https://tinyurl.com/2tunspm3......................................1

*U.S. Dep't of Health & Human Servs., Office of the Surgeon Gen., The Health Consequences of Smoking—50 Years of Progress* (2012), https://tinyurl.com/3r799873 ..........................................................................12

### INTRODUCTION

"Menthol cigarettes, sweet cigars, candy vapes, and other flavored tobacco products serve one purpose: to mask the harshness of tobacco and get users hooked to a dangerous life-long addiction." Cal. S. Rules Comm., Senate Floor Analysis for SB 793, at 4 (Aug. 25, 2020), https://tinyurl.com/bmu8e885 (author's statement). So explained California State Senator Jerry Hill in bringing S.B. 793 to the Legislature. By marketing such products, he explained elsewhere, "the tobacco industry [has] weaponized its tactics to beguile a new generation into nicotine addiction while keeping longtime users hooked." Press Release, Office of State Sen. Jerry Hill, California Senate Passes SB 793 (June 25, 2020), https://tinyurl.com/2tunspm3. After hearing from medical experts, public health organizations, and parents that flavored tobacco products facilitate tobacco initiation, especially among youth—and over substantial industry opposition—the California Legislature passed S.B. 793, prohibiting the retail sale of flavored tobacco products in California. S.B. 793, Senator Hill proclaimed, will help the State "break[] Big Tobacco's death grip" on its next generation of users. *Id.*

Plaintiffs, a group of tobacco product manufacturers and tobacco retailers, *see* Compl. ¶¶ 5–12, at 2–4, ECF No. 1, acknowledge the importance of keeping tobacco products out of the hands of underage users, *see id.* ¶ 24, at 7. The Complaint lists voluntary programs that some Plaintiffs have introduced to limit youth tobacco initiation, *see id.* ¶¶ 25–28, at 7–8, and casts Plaintiffs as partners with the U.S. Food and Drug Administration ("FDA") in working to curb youth tobacco consumption, *see id.* ¶¶ 24, at 7. But legislators have not been convinced and passed S.B. 793 in August 2020 to limit youth access to flavored tobacco products.

The tobacco industry successfully delayed the implementation of S.B. 793 by almost two years. S.B. 793 was initially set to become effective on January 1, 2021, but industry actors, including some of the plaintiffs in this very suit, prevented

1

Def. Bonta's Mem. P. & A. Supp. Mot. Dismiss (3:22-cv-01755-CAB-WVG)

S.B. 793 from taking effect until resolution of a referendum, Proposition 31. The People of California overwhelmingly approved S.B. 793 in the November 8, 2022, election. *See* Cal. Sec'y of State, Statement of the Vote 91 (2022), https://tinyurl .com/59aur6mu. In doing so, California joined hundreds of other state and local governments banning the retail sale of flavored tobacco products.

Unable to prevail in the democratic process, the tobacco industry has resorted to the courts again and again in an attempt to replace democratic will with their own. In every case, those attempts have been unsuccessful. *See R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 561 (9th Cir. 2022); *U.S. Smokeless Tobacco Mfg. Co. v. City of New York*, 708 F.3d 428, 436 (2d Cir. 2013); *Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence*, 731 F.3d 71, 85 (1st Cir. 2013); *Indeps. Gas & Serv. Stations Ass'ns v. City of Chicago*, 112 F. Supp. 3d 749, 754 (N.D. Ill. 2015); *R.J. Reynolds Tobacco Co. v. City of Edina*, 482 F. Supp. 3d 875, 886 (D. Minn. 2020), *appeal docketed*, No. 20-2852 (8th Cir. Sept. 4, 2020). This suit is merely the latest attempt to avoid the clear will of the people.

Indeed, Plaintiffs know their primary challenge to S.B. 793 must fail. *See* Compl. ¶ 59, at 14–15 (citing *County of Los Angeles*, 29 F.4th at 556). The Ninth Circuit has already held that federal law does not preempt flavored tobacco sales prohibitions, joining every court in the country that has addressed such prohibitions. *See County of Los Angeles*, 29 F.4th at 561. Plaintiffs' First Cause of Action, alleging preemption, is wholly foreclosed by that precedent, and should be dismissed.

Plaintiffs tack on a dormant Commerce Clause cause of action in an attempt to avoid the weight of authority against them on the issue of preemption. But Plaintiffs' Second Cause of Action also lacks merit and Plaintiff's Second Cause of Action should be dismissed as well.

///

///

2

Def. Bonta's Mem. P. & A. Supp. Mot. Dismiss (3:22-cv-01755-CAB-WVG)

## LEGAL STANDARD

Federal pleading requires only a short and plain statement that Plaintiffs are entitled to relief and a demand for the relief sought. Fed. R. Civ. P. 8(a). But Defendants may then raise by a motion to dismiss the defense that Plaintiffs fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal with prejudice is appropriate when amendment would be futile. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may be denied if a court determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986))).

## BACKGROUND

The California Legislature passed S.B. 793 in August 2020. The statute prohibited the retail sale of flavored tobacco products on a statewide basis. *See* S.B. 793, Act of Aug. 28, 2020, ch. 34, 2020 Cal. Stat. 1743 (codified at Cal. Health & Safety Code § 104559.5). S.B. 793 provides that a tobacco retailer may not sell a "flavored tobacco product" or a "tobacco product flavor enhancer." Cal. Health & Safety Code § 104559.5(b)(1). The statute defines a "flavored tobacco product" as a tobacco product "that contains a constituent that imparts a characterizing flavor." *Id.* § 104559.5(a)(4). It defines a "characterizing flavor," in turn, as a "distinguishable taste or aroma, or both, other than the taste or aroma of tobacco, imparted by a tobacco product or any byproduct produced by the tobacco product." *Id.* § 104559.5(a)(1). A tobacco product "shall not be determined to have

3

a characterizing flavor solely because of the use of additives or flavorings or the provision of ingredient information." *Id.* "Rather, it is the presence of a distinguishable taste or aroma, or both . . . that constitutes a characterizing flavor." *Id.*

S.B. 793 was initially scheduled to take effect on January 1, 2021, and in response, R.J. Reynolds and other plaintiffs from the tobacco industry challenged S.B. 793 in October 2020. *See* Compl., *R.J. Reynolds Tobacco Co. v. Becerra*, No. 3:20-cv-01990-CAB-WVG, ECF No. 1 (S.D. Cal. Oct. 9, 2020). One month later, a coalition of manufacturers and sellers of tobacco products filed a referendum petition to place S.B. 793 on the next statewide ballot. *See* Order, *Agenbroad v. Padilla*, Case No. 34-2020-80003542 (Sacramento Super. Ct. Dec. 10, 2020). In January 2021, the referendum was certified for the November 2022 election as Proposition 31. That had the effect of suspending operation of S.B. 793 until the referendum was approved by a majority of voters. *See Wilde v. City of Dunsmuir*, 9 Cal. 5th 1105, 1111 (2020); Cal. Const. art. II, § 9(a). In light of those developments, this Court dismissed the prior lawsuit challenging S.B. 793 for want of jurisdiction. Order, *R.J. Reynolds Tobacco Co. v. Becerra*, No. 3:20-cv-01990-CAB-WVG, ECF No. 57 (S.D. Cal. Aug. 6, 2021).

On November 8, 2022, nearly two-thirds of California voters approved Proposition 31, allowing S.B. 793 to take effect. Cal. Sec'y of State, Statement of the Vote 91 (2022), https://tinyurl.com/59aur6mu. The election was certified by the California Secretary of State on December 16, resulting in S.B. 793 coming into force five days later on December 21. *See id.* at 18; Cal. Const. art. II, § 10(a).

The day after California's voters approved Proposition 31, Plaintiffs in this case filed a Complaint alleging that the TCA expressly preempts S.B. 793's ban on the sales of flavored tobacco products, and that S.B. 793 violates the dormant Commerce Clause. ECF No. 1. Plaintiffs also filed a Motion for Preliminary Injunction and Injunction Pending Appeal based solely on their preemption claim.

4

Def. Bonta's Mem. P. & A. Supp. Mot. Dismiss (3:22-cv-01755-CAB-WVG)

ECF No. 13. But they acknowledged that the district court was "bound by Ninth Circuit precedent" to deny that motion. Mem. P. & A. Supp. Pls.' Mot. Prelim. Inj. & Inj. Pending Appeal 1, ECF No. 13-1. On that basis, plaintiffs "acquisc[ed] in the denial" of the motion and requested a ruling from this Court by November 23, 2022. *Id.* at 2.

The Court denied Plaintiffs' motion on November 15, 2022. Order, ECF No. 21. The same day, Plaintiffs appealed that order. Not. Appeal, ECF No. 22. In the Ninth Circuit, Plaintiffs filed an Emergency Motion for Injunction Pending Appeal, which was denied on November 28, 2022. Order of USCA, ECF No. 27. On November 29, 2022, Plaintiffs filed an Emergency Application for Writ of Injunction with the Supreme Court, which that Court denied on December 12, 2022. *See R.J. Reynolds Tobacco Co. v. Bonta*, No. 22A474 (U.S.).[1]

At the parties' request, this Court extended the deadline to respond to the Complaint to January 11, 2022. Order, ECF No. 29.

## ARGUMENT

Plaintiffs agree that Ninth Circuit precedent forecloses their preemption claim. Plaintiffs' dormant Commerce Clause claim, too, fails on the law. Both should be dismissed with prejudice for failure to state a claim.

## I. BINDING NINTH CIRCUIT PRECEDENT REQUIRES DISMISSAL OF PLAINTIFFS' PREEMPTION CLAIM

Plaintiffs acknowledge that their claim of preemption is foreclosed by Ninth Circuit precedent. *See* Compl. ¶ 59, at 14–15. Both this Court and the Ninth Circuit have already denied plaintiffs' motions for preliminary injunctive relief on that basis, and the Supreme Court declined to grant emergency injunctive relief pending appellate proceedings. *See* Order, ECF No. 21; Order of USCA, ECF No. 27; *R.J. Reynolds Tobacco Co. v. Bonta*, No. 22A474 (U.S. Dec. 12, 2022).

---

[1] Those filings are available on the United States Supreme Court's electronic docket at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22a474.html.

As the Ninth Circuit correctly held in *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542 (9th Cir. 2022), Congress explicitly preserved state authority to enact sales regulations when it enacted the Family Smoking Prevention and Tobacco Control Act ("Tobacco Control Act" or "TCA"), Pub. L. No. 111-31, 123 Stat. 1776 (2009) (codified at 21 U.S.C. §§ 387–387u and amending scattered sections of 15 U.S.C. and 21 U.S.C.), including prohibitions of the sale of certain of tobacco products, *see* 29 F.4th at 561. The court of appeals held that a similar flavored tobacco sales ban is not preempted by federal law because it "easily" falls within the authority Congress preserved for states, tribe, and localities to regulate sales and Plaintiffs cannot distinguish that binding authority here. *County of Los Angeles*, 29 F.4th at 548, 556; *see also Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result . . . ."). Plaintiffs' First Cause of Action, Compl. ¶¶ 53–59, at 13–15, is thus properly dismissed with prejudice.

## II. S.B. 793 IS FULLY CONSONANT WITH THE COMMERCE CLAUSE

The Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const., art. I, § 8, cl. 3. Though an affirmative grant of power, it "has long been understood to have a 'negative' aspect," known as the dormant Commerce Clause, "that denies the States the power unjustifiably to . . . burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994). Relying mostly on quoted legal standards, Plaintiffs allege a scattershot of three different claims in this one cause of action. Each fails as a matter of law. Plaintiffs' Second Cause of Action, Compl. ¶¶ 60–67, at 15–16, should therefore be dismissed with prejudice.

"Modern dormant Commerce Clause jurisprudence primarily 'is driven by concern about economic protectionism—that is, regulatory measures designed to

6

benefit in-state economic interests by burdening out-of-state competitors.'" *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (quoting *Dep't of Revenue v. Davis*, 553 U.S. 328, 337–38 (2008)). "The Supreme Court has adopted a two-tiered approach to analyzing state economic regulation under the Commerce Clause." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) (*Ass'n des Eleveaurs de Canards I*)). Under the first tier, states may not discriminate against interstate commerce, unless they satisfy a form of heightened scrutiny. *See South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018). Under the second tier, when a law regulates evenhandedly, it will be upheld unless the burden imposed on such commerce is substantial and so clearly excessive in relation to the putative local benefits that it is "unreasonable or irrational." *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1196 (9th Cir. 2007) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 144–46 (1970)). Accordingly, States retain broad authority under their general police powers, "even though interstate commerce may be affected." *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (quoting *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 36 (1980)).

In several cases, the Ninth Circuit has recognized and applied a third kind of dormant Commerce Clause limitation—barring States from "directly control[ling] commerce occurring wholly outside the boundaries of a State." *Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1101 (9th Cir. 2013) (*Rocky Mtn. I*). The Ninth Circuit has made clear in numerous cases that this extraterritoriality rule does not prohibit States from enacting restrictions on in-state sales, even if such restrictions have effects on out-of-state commerce. *See, e.g.*, *id.* at 1106; *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1118 (9th Cir. 2022) (*Ass'n des Eleveaurs de Canards II*) ("California's sales ban prohibits only in-states sales of foie gras so it is not impermissibly extraterritorial even if it

7

Def. Bonta's Mem. P. & A. Supp. Mot. Dismiss (3:22-cv-01755-CAB-WVG)

influences out-of-state producers' conduct." (citation omitted)); *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1029 (9th Cir. 2021) ("Under our precedent, state laws that regulate only conduct in the state, including the sale of products in the state, do not have impermissible extraterritorial effects."), *cert. granted* 142 S. Ct. 1413 (2022); *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146 (upholding in-state sales ban of shark fins); *Ass'n des Eleveurs de Canards I*, 729 F.3d at 953 (upholding in-state sales ban of foie gras made from force-fed animals); *cf. Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1324 (9th Cir. 2015) (striking down a statute because it "involve[d] regulation of wholly out-of-state conduct" rather than "regulat[ion of] *in-state conduct* with allegedly significant out-of-state practical effects").

### A. Plaintiffs' First Theory

Plaintiffs first attempt to place S.B. 793 into the Ninth Circuit's third tier of dormant Commerce Clause jurisprudence by alleging that it "dictates how out-of-state manufacturers must manufacture their products" and "thus directly regulates" out-of-state commerce. Compl. ¶ 64, at 15–16. It does not.

S.B. 793 is instead an in-state sales restriction. It bans in-state retail sales of a particular class of tobacco products—flavored tobacco products. It does not direct out-of-state tobacco manufacturers to do or refrain from doing anything. Indeed, it does not even matter what or how an ingredient is added to a tobacco product that gives that product a characterizing flavor: "A tobacco product shall *not* be determined to have a characterizing flavor solely because of the use of additives or flavorings or the provision of ingredient information. Rather, it is the *presence* of a distinguishable taste or aroma, or both, . . . that constitutes a characterizing flavor." Cal. Health & Safety Code § 104559.5(a)(1) (emphasis added). If the finished tobacco product, however manufactured, has a taste or aroma other than tobacco, it cannot be sold within the State at retail. *Cf. County of Los Angeles*, 29 F.4th at 556 ("[B]anning the sale of cigarettes over a certain length or diameter . . . is merely

8

banning the sale of a certain type of tobacco product, not dictating how that product must be produced." (emphasis removed)). Rather than regulating out-of-state tobacco product manufacturing, the law instead establishes restrictions for *in-California* retail sales of a discrete subset of tobacco products. *See Rocky Mtn. I*, 730 F.3d at 1101. Accordingly, the basis of Plaintiffs' first dormant Commerce Clause claim falls, and so must the claim itself. S.B. 793 regulates only the *in-state sale* of flavored tobacco products to mitigate against their *in-state* harms—"a central aspect of the state sovereignty protected by the Constitution." *Rocky Mtn. Farmers Union v. Corey*, 913 F.3d 940, 952 (9th Cir. 2019) (*Rocky Mtn. II*).

## B.   Plaintiffs' Second Theory

Plaintiffs also attempt to place S.B. 793 in the first tier of dormant Commerce Clause jurisprudence, alleging that S.B. 793 "contains exceptions that discriminate against out-of-state businesses, in favor of local businesses." Compl. ¶ 65, at 16. The only allegation in Plaintiffs' Complaint that could be construed as support is the allegation that such exemptions exist. *See* Compl. ¶ 39, at 11 ("The sales ban excludes a handful of products sold in certain situations, including shisha tobacco products, premium cigars, and loose leaf pipe tobacco."). It is even unclear what the allegedly favored in-state businesses are. But no amount of additional pleading could rescue this claim and it fails on the law.

S.B. 793's exemptions do not favor in-state business, whatever their position in the distribution chain. Retailers can sell the exempted flavored tobacco products—shisha, premium cigars, or loose leaf pipe tobacco—whether they are located in-state or out-of-state.[2] *See* Cal. Health & Safety Code § 104559.5(c)–(e).

---

[2] Perhaps Plaintiffs believe that the exemption for "premium cigars sold in cigar lounges where products are purchased and consumed only on the premises," Cal. Health & Safety Code § 104559.5(d), favors in-state businesses as out-of-state businesses cannot benefit from an exemption requiring on-premises consumption. But the very next provision exempts premium cigars entirely, whether consumed on-premises or not. *See id.* § 104559.5(e). And even if this exemption benefited on-state retailers at the expense of out-of-state retailers, all of the retailer plaintiffs are located in-state and necessarily could not suffer injury as members of the purportedly advantaged class.

9

Def. Bonta's Mem. P. & A. Supp. Mot. Dismiss (3:22-cv-01755-CAB-WVG)

As to manufacturers, S.B. 793 and its exemptions do not affect the manufacture of flavored tobacco products at all, either inside or outside of California. *See supra* II.A, at pp. 8–9. Likewise, S.B. 793 and its exemptions do not affect the movement of flavored tobacco products in interstate commerce, whether through California or not. S.B. 793 only prevents retailers from selling those non-exempted flavored tobacco products to consumers in California, without regard to their provenance or the location of the retailer. *See* Cal. Health & Safety Code § 104559.5(b)(1) ("A tobacco retailer, or any of the tobacco retailer's agents or employees, shall not sell, offer for sale, or possess with the intent to sell or offer for sale, a flavored tobacco product . . . ."). Plaintiffs' second dormant Commerce Clause theory accordingly fails to state a claim.

### C. Plaintiffs' Third Theory

Third, Plaintiffs make what is known as a *Pike* claim, alleging S.B. 793 "imposes burdens on out-of-state commerce that are 'clearly excessive in relation to the putative local benefits' from the ban." Compl. ¶ 66, at 16 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Ninth Circuit "precedents, however, preclude any judicial 'assessment of the benefits of [a state] law[ ] and the . . . wisdom in adopting' it unless the state statute either discriminates in favor of in-state commerce or imposes a 'significant burden on interstate commerce.'" *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146 (alterations in original) (quoting *Natl Ass'n of Optometrists*, 682 F.3d at 1156). As described above, *see supra* II.A, at pp. 8–9, S.B. 793 does not discriminate against out-of-state competitors as Plaintiffs allege. *Cf. Ass'n des Eleveurs de Canards I*, 729 F.3d at 952 ("[M]ost statutes that impose a substantial burden on interstate commerce do so because they are discriminatory."). As Plaintiffs allege no other cognizable burden on interstate commerce, this third recitation of the law fails to state a claim.

Moreover, even if Plaintiffs were to amend their Complaint to allege the retail sales ban has some indirect impact on manufacturers' operations—producing fewer

menthol cigarettes, for example—S.B. 793 still comports with the Commerce Clause. This is because, "even when state law has significant extraterritorial effects, it passes Commerce Clause muster when . . . those effects result from the regulation of in-state conduct." *Chinatown Neighborhood Ass'n*, 794 F.3d at 1145; *see id.* at 1146–47 (affirming dismissal of *Pike* claim similar to the one alleged by Plaintiffs here). By regulating only California retail sales to consumers, S.B. 793 regulates only in-state conduct, and survives Plaintiffs' Commerce Clause challenge regardless of whether it has significant out-of-state effects. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 472–73 (1981) (rejecting *Pike* claim challenging a regulation of milk containers sold in Minnesota, despite manufacturers "having to conform to different packaging requirements in Minnesota and the surrounding States"); *Ass'n des Eleveurs de Canards I*, 729 F.3d at 952 (rejecting *Pike* challenge to a California foie gras sales ban that "only preclude[d] Plaintiffs' 'more profitable' method of producing foie gras"). Because S.B. 793 is not discriminatory and only regulates in-state conduct, Plaintiffs have failed to allege any cognizable burden on interstate commerce—nor could they. Therefore, the Court need not and should not conduct any balancing of the statute's burdens on S.B. 793's alleged burdens on out-of-state commerce against its local benefits.

But even if the Court did proceed to balancing, Plaintiffs' claim would still fail. States hold primary responsibility for the public health, and S.B. 793 is aimed squarely at reducing the deleterious health effects of smoking, primarily by addressing youth usage. When the California Legislature deliberated on S.B. 793, it considered evidence that 80 percent of young people who have used tobacco started with a flavored product and that many of those who begin using tobacco in their youth continue to do so into adulthood. Cal. S. Comm. on Health, Report on Flavored Tobacco Products 3, 6 (May 11, 2020), https://tinyurl.com/bmu8e885 [hereinafter Cal. S. Report]. For example, the Centers for Disease Control and Prevention ("CDC") reports that over 30 million adults in the United States

currently smoke cigarettes on a daily basis and that nearly 90 percent of them started using tobacco before the age of 18. *See* Monica E. Cornelius, et al., *Tobacco Product Use Among Adults—United States 2020*, 71 MORB. MORTAL. WKLY. REP. 397, 397, 402 (2022), https://tinyurl.com/49t4e4uk; CDC, Youth and Tobacco Use (Nov. 10, 2022), https://tinyurl.com/mr3rnxey. Indeed, Plaintiffs themselves agree to the importance of "keeping tobacco products out of the hands of youth." Compl. ¶ 24, at 7.

The sustained use of tobacco products can grievously harm individual health and imposes massive burdens on our healthcare system. Nationwide, nearly half a million deaths each year are caused by cigarette smoking—smoking causes 90 percent of all lung cancer deaths; it causes 80 percent of all deaths from chronic obstructive pulmonary disease; it increases the risk of coronary heart disease and stroke by two to four times; and it leads to tens of billions of dollars in increased health care costs. Cal. S. Report 3; CDC, *Health Effects of Cigarette Smoking* (Oct. 29, 2021), https://tinyurl.com/3zbj4kwe; TCA § 2(14), 21 U.S.C. § 387 note (legislative finding that a 50 percent reduction in tobacco use among young smokers in 2009 would have resulted in "$75,000,000,000 in savings attributable to reduced health care costs"). In California alone, a study predicted that more than 440,000 residents who were under age 18 in 2012 would ultimately die prematurely as a result of tobacco use. *See* Cal. S. Report 3; *U.S. Dep't of Health & Human Servs., Office of the Surgeon Gen., The Health Consequences of Smoking—50 Years of Progress* 693 (2012), https://tinyurl.com/3r799873. S.B. 793 was enacted to address the patent harms to public health caused by the sale of flavored tobacco products. *See* Cal. S. Report 1–16.

Accordingly, the benefits of S.B. 793 plainly outweigh any possible burden on interstate commerce Plaintiffs could allege. *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1147 (affirming dismissal of *Pike* claim with prejudice against a sales

///

12

Def. Bonta's Mem. P. & A. Supp. Mot. Dismiss (3:22-cv-01755-CAB-WVG)

ban addressing "legitimate matters of local concern"). This third theory should be dismissed with prejudice.

### D. The TCA saves S.B. 793 from any dormant Commerce Clause challenge

Finally, even if S.B. 793 otherwise ran afoul of the dormant Commerce Clause—and it does not—section 916 of the TCA would save it. "Congress may 'redefine the distribution of power over interstate commerce' by 'permit[ting] the states to regulate the commerce in a manner which would otherwise not be permissible.'" *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87–88 (1984) (alteration in original) (quoting *S. Pac. Co. v. Arizona*, 325 U.S. 761, 769 (1945)). Congress specifically authorized states to implement measures "prohibiting the sale, distribution, [or] possession . . . of tobacco products," TCA § 916(a)(1), 21 U.S.C. § 387p(a)(1), and the Ninth Circuit has already held that retail sale prohibitions of flavored tobacco products "easily" fall within that authority Congress preserved for States, tribes, and localities, *County of Los Angeles*, 29 F.4th at 548. Thus, accepting Plaintiffs' dormant Commerce Clause claims would render this express authorization of state regulatory power a nullity, and it must be rejected. *Cf. supra*, subsection I, pp. 5–6.

At bottom, California's "ability to control its internal markets and combat local harms is squarely within its traditional police power." *Rocky Mtn. II*, 913 F.3d at 955. And by regulating only in-state retail sales, S.B. 793 is an exercise of the authority preserved by the Constitution and by the TCA for California to regulate its own markets.

### CONCLUSION

For the reasons provided above, the Court should dismiss Plaintiffs' Complaint, ECF No. 1, with prejudice.

---

13

Dated:  January 11, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
JAMES V. HART
Supervising Deputy Attorney General
TAYLOR ANN WHITTEMORE
Deputy Attorney General


 /s/ Peter F. Nascenzi


PETER F. NASCENZI
Deputy Attorney General
*Attorneys for Defendant*
*Rob Bonta, in his official capacity as*
*Attorney General of California*

SA2022304936
36840855

14

Def. Bonta's Mem. P. & A. Supp. Mot. Dismiss (3:22-cv-01755-CAB-WVG)