Noel J. Francisco*
(D.C. Bar No. 464752)
JONES DAY
njfrancisco@jonesday.com
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700

*admitted *pro hac vice*

*[Additional counsel identified on
signature page]*
*Counsel for Plaintiffs*
R.J. Reynolds Tobacco Company; R.J.
Reynolds Vapor Company; American
Snuff Company, LLC; Santa Fe
Natural Tobacco Company, Inc.;
Modoral Brands Inc.; Neighborhood
Market Association, Inc.; and Morija,
LLC dba Vapin' the 619

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>ROBERT BONTA, in his official capacity as Attorney General of California; and SUMMER STEPHAN, in her official capacity as District Attorney for the County of San Diego,<br><br>   *Defendants*. | Case No. 3:22-cv-01755-CAB WVG<br>Hon. Cathy Ann Bencivengo<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**<br><br>Hearing Date: February 24, 2023<br>Time: N/A<br>Courtroom: 15A<br><br>Complaint Filed: November 9, 2022 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................ii

INTRODUCTION ........................................................................... 1

BACKGROUND .............................................................................. 1

    1.   California Senate Bill 793 ............................................. 1

    2.   Procedural History ...................................................... 2

STANDARD OF REVIEW ................................................................ 2

ARGUMENT ................................................................................... 3

I.     PLAINTIFFS HAVE STATED A COMMERCE CLAUSE CLAIM ............. 3

  A.   Plaintiffs have stated a claim that SB793 is unconstitutional
       because it controls commercial conduct outside California ...................... 3

  B.   Plaintiffs have stated a claim that SB793 is unconstitutional
       because its burdens on interstate commerce exceed its
       putative benefits ............................................................................. 11

      1.   Plaintiffs have adequately alleged that SB793 imposes
           substantial burdens on interstate commerce .................................. 12

      2.   Whether SB793's putative justifications outweigh the ban's
           burdens on interstate commerce is a question of fact that
           cannot be decided on a motion to dismiss ................................... 14

  C.   The Tobacco Control Act's preservation clause does not cure
       SB793's constitutional defects ......................................................... 17

II.   THOUGH PLAINTIFFS' EXPRESS PREEMPTION CLAIM IS
     FORECLOSED BY NINTH CIRCUIT PRECEDENT, THAT
     PRECEDENT IS WRONG .................................................................. 18

CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altria Grp., Inc. v. United States,*
    580 F. Supp. 3d 298 (E.D. Va. 2022) .................................................. 6

*Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n,*
    461 U.S. 375 (1983) .................................................................... 3

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
    729 F.3d 937 (9th Cir. 2013) ................................................ 5, 8, 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................... 3

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,*
    476 U.S. 573 (1986) ................................................................ 4, 10

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996) ........................................................... 3

*Cloverleaf Butter Co. v. Patterson,*
    315 U.S. 148 (1942) .................................................................... 8

*Daniels Sharpsmart, Inc. v. Smith,*
    889 F.3d 608 (9th Cir. 2018) .......................................................... 5

*Dep't of Revenue v. Davis,*
    553 U.S. 328 (2008) ................................................................... 12

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
    541 U.S. 246 (2004) ................................................................... 19

*Erickson v. Pardus,*
    551 U.S. 89 (2007) ..................................................................... 3

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) .................................................................... 7

*Gen. Motors Corp. v. Tracy,*
    519 U.S. 278 (1997) .................................................................. 7, 9

*Great Atl. & Pac. Tea Co. v. Cottrell,*
    424 U.S. 366 (1976) .................................................................... 3

*Healy v. Beer Inst., Inc.,*
    491 U.S. 324 (1989) .............................................................. 4, 5, 6, 9

*Hunt v. Washington State Apple Advert. Comm'n,*
432 U.S. 333 (1977) ...................................................................... 12

*Lopez v. Smith,*
203 F.3d 1122 (9th Cir. 2000) (en banc) .................................. 11

*Nat'l Meat Ass'n v. Harris,*
565 U.S. 452 (2012) ...................................................................... 19

*Nat'l Pork Producers Council v. Ross,*
6 F.4th 1021 (9th Cir. 2021) ...........................................*passim*

*North Dakota v. Heydinger,*
825 F.3d 912 (8th Cir. 2016) .......................................................... 5

*Pac. Nw. Venison Prods. v. Smitch,*
20 F.3d 1008 (9th Cir. 1994) ...................................................... 12

*Parks School of Business, Inc. v. Symington,*
51 F.3d 1480 (9th Cir. 1995) .............................................. 12, 14

*Pharm. Res. & Mfrs. of Am. v. Alan McClain,*
No. 4:21-cv-864 (E.D. Ark. Dec. 29, 2022) ............................ 11

*Pike v. Bruce Church, Inc.,*
397 U.S. 137 (1970) .............................................................. 12, 17

*R.J. Reynolds Tobacco Co. v. County of Los Angeles,*
29 F.4th 542 (9th Cir. 2022) ..............................2, 18, 19, 20

*Raymond Motor Transp., Inc. v. Rice,*
434 U.S. 429 (1978) ...................................................................... 14

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,*
442 F.3d 741 (9th Cir. 2006) ........................................................ 7

*Rocky Mtn. Farmers Union v. Corey,*
730 F.3d 1070 (9th Cir. 2013) ...................................................... 4

*Sam Francis Foundation v. Christies, Inc.,*
784 F.3d 1320 (9th Cir. 2015) ...................................................... 5

*Schollenberger v. Pennsylvania,*
171 U.S. 1 (1898) ...............................................................*passim*

*Shroyer v. New Cingular Wireless Servs., Inc.,*
622 F.3d 1035 (9th Cir. 2010) ...................................................... 3

*South Dakota v. Wayfair, Inc.,*
138 S. Ct. 2080 (2018) ................................................................ 12

iii

*South-Central Timber Development, Inc. v. Wunnicke*,
467 U.S. 82 (1984) .................................................................. 17

*United Egg Producers v. Dep't of Agric. of P.R.*,
77 F.3d 567 (1st Cir. 1996) ........................................................ 3

*Valley Bank of Nev. v. Plus Sys., Inc.*,
914 F.2d 1186 (9th Cir. 1990) ..................................................... 4

*Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*,
654 F.3d 919 (9th Cir. 2011) ................................................. 17, 18

CONSTITUTIONS, STATUTES, AND LEGISLATIVE MATERIALS

U.S. Const. art. I, § 8 ................................................................ 3

7 U.S.C. § 1311 ......................................................................... 7

21 U.S.C. § 387 ...................................................................... 7, 9

21 U.S.C. § 387g .................................................................... 8, 19

21 U.S.C. § 387p ............................................................... 18, 19, 20

26 U.S.C. § 5701 ........................................................................ 9

CHIP Reauthorization Act of 2009,
Pub. L. No. 111-3, 123 Stat. 8 ..................................................... 9

Family Smoking Prevention and Tobacco Control Act,
Pub. L. No. 111-31, 123 Stat. 1776 (2009) ................................... 7, 8

Revenue Act of 1862, 37 Cong. Ch. 119, 12 Stat. 432 ........................ 9

Mass. Gen. Law c. 270, § 28 ......................................................... 9

SB793, 2019–2020 Reg. Sess. (Cal. 2020) ............................... *passim*

Edina, Minn. City Code § 12-257 .................................................. 9

RULES AND REGULATORY MATERIALS

CDC, *Outbreak of Lung Injury Associated with the Use of E-Cigarette,
or Vaping, Products* (Feb. 25, 2020) ...................................... 15, 16

FDA, *Deeming Tobacco Products*,
81 Fed. Reg. 28,973 (May 10, 2016) ........................................... 15

Fed. R. Civ. P. 12 .................................................................. 3, 11

Fed. R. Evid. 201 ....................................................................... 7

FTC, *Cigarette Report for 2021* (2023) ......................................... 6

*Menthol in Cigarettes, Tobacco Products*,
    78 Fed. Reg. 44,484 (July 24, 2013) ...................................................... 8

*Regulation of Flavors in Tobacco Products*,
    83 Fed. Reg. 12,294 (Mar. 21, 2018) ...................................................... 8

*Tobacco Product Standard for Characterizing Flavors in Cigars*,
    87 Fed. Reg. 26,396 (May 4, 2022) ........................................................ 8

*Tobacco Product Standard for Menthol in Cigarettes*,
    87 Fed. Reg. 26,454 (May 4, 2022) ........................................................ 8

**OTHER AUTHORITIES**

Chaloupka, F.J. & Glantz, S.A., *Potential Effects of a Ban on the
    Sale of Flavored Tobacco Products in California* ................................... 6

Abigail S. Friedman, *A Difference-in-Differences Analysis of Youth
    Smoking and a Ban on Sales of Flavored Tobacco Products in San
    Francisco, Cal.*, 175 JAMA Pediatrics 863 (2021) ............................. 16

Letter from ACLU, et al., to Congressman Frank Pallone
    (Feb. 27, 2020) .................................................................................. 16

RAI Services Company, *Comment from RAI Services Company*
    (Aug. 3, 2022) ............................................................................. 14, 15

Romeh, et al., *Trends in Annual Sales and Pack Price of Cigarettes
    in the US, 2015–2021* (June 3, 2022) ................................................... 6

## INTRODUCTION

A new California law bans the retail sale of tobacco products with a characterizing flavor other than tobacco anywhere in the State. SB793, 2019–2020 Reg. Sess. (Cal. 2020). But California's law is unconstitutional twice over: it violates the dormant Commerce Clause of the U.S. Constitution and it is preempted by the federal Tobacco Control Act. Compl. ¶¶ 53–73. Defendants have moved to dismiss both claims.[1] But this Court should not dismiss the Commerce Clause claim (Count II). Plaintiffs have plausibly alleged that SB793 violates the dormant Commerce Clause in two ways. Compl. ¶¶ 60–67. *First*, SB793 unconstitutionally regulates out-of-state and interstate commerce by dictating how manufacturers must manufacture tobacco products. Plaintiffs allege and will demonstrate that SB793 imposes practical effects almost entirely outside California and interferes with Congress's goal of ensuring national uniformity in regulating tobacco product manufacturing. *Second*, Plaintiffs allege and will demonstrate that SB793 imposes substantial burdens on interstate commerce that outweigh any of its putative benefits to California. Indeed, the purported benefits of SB793 are illusory, as experience from other jurisdictions shows. Because Plaintiffs have adequately pleaded a dormant Commerce Clause claim, the Court should deny Defendants' Motion to Dismiss as to that claim.

Plaintiffs recognize that their express preemption claim (Count I) is currently foreclosed by Ninth Circuit precedent and that this Court is bound to dismiss that claim. *See* Compl. ¶¶ 53–59. Plaintiffs thus acquiesce in the dismissal of Count I while preserving their arguments for appeal.

## BACKGROUND

### 1. California Senate Bill 793

SB793 took effect in late 2022. It states that tobacco retailers "shall not sell … a flavored tobacco product." SB793 § 104559.5(b)(1). SB793 defines "[f]lavored

---

[1] Defendant Stephan joins the motion to dismiss filed by Bonta. Dkt. No. 32-1. Plaintiffs thus refer to Bonta's Motion. Bonta Mot., Dkt. No. 31 ("MTD").

tobacco product" as "any tobacco product that contains a constituent that imparts a characterizing flavor." SB793 § 104559.5(a)(4). The law defines "[c]haracterizing flavor" as "a distinguishable taste or aroma, or both, other than the taste or aroma of tobacco, imparted by a tobacco product or any byproduct produced by the tobacco product," including "menthol." *Id.* § 104559.5(a)(1). SB793 thus bans tobacco retailers in California from selling nearly any type of tobacco product with a characterizing flavor other than tobacco, including menthol cigarettes or menthol e-cigarettes. Violators face a $250 fine per violation. *Id.* § 104559.5(f).

### 2. Procedural History

Before SB793 took effect, Plaintiffs filed this action and sought a preliminary injunction based on their express preemption claim. *See* Dkt. No. 13. Because Plaintiffs recognized that their express preemption claim is currently foreclosed by Ninth Circuit precedent, they acquiesced in the denial of that motion, while still preserving their arguments for appellate review. Dkt. No. 13-1, at 1–2. Specifically, the Ninth Circuit has held that the Tobacco Control Act ("TCA") does not preempt local laws that prohibit the retail sale of tobacco products because the products fail to comply with local standards. *See R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542 (9th Cir. 2022) ("*L.A. County*"), *cert. pending*, No. 22-338 (U.S. filed Oct. 7, 2022). Accordingly, this Court denied that preliminary injunction motion, and Plaintiffs appealed. Dkt. Nos. 21, 22.

On appeal, Plaintiffs moved for an injunction pending appeal, which the Ninth Circuit denied given *L.A. County*. Order, No. 22-56052 (9th Cir. Nov. 28, 2022). Plaintiffs then applied to the Supreme Court for emergency injunctive relief, which was denied without explanation. Order, No. 22A474 (U.S. Dec. 12, 2022).

The Ninth Circuit recently affirmed this Court's denial of their preliminary injunction motion. Order, Dkt. No. 33.

### STANDARD OF REVIEW

In considering a motion to dismiss, courts must accept the allegations in the

complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissing under Rule 12(b)(6) is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

## I.  PLAINTIFFS HAVE STATED A COMMERCE CLAUSE CLAIM.

The Commerce Clause provides, "Congress shall have power ... [t]o regulate commerce ... among the several states." U.S. Const. art. I, § 8, cl. 3. Although framed as an affirmative grant to Congress, the clause has long been understood to limit "the power of the States to interfere with or impose burdens on interstate commerce." *Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 389 (1983). This limitation on state power, often called the "dormant" Commerce Clause, provides a "self-executing limitation on state authority to enact laws imposing substantial burdens on interstate commerce even in the absence of Congressional action." *United Egg Producers v. Dep't of Agric. of P.R.*, 77 F.3d 567, 570 (1st Cir. 1996). Fundamentally, the dormant Commerce Clause ensures that state autonomy over "local needs" does not inhibit "the overriding requirement of freedom for the national commerce." *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976).

Here, Plaintiffs have adequately alleged that SB793 violates the dormant Commerce Clause in two ways: (i) it unconstitutionally controls conduct outside California, and (ii) it unduly burdens interstate commerce. *See* Compl. ¶¶ 60–67.

### A.  Plaintiffs have stated a claim that SB793 is unconstitutional because it controls commercial conduct outside California.

Plaintiffs have adequately alleged that SB793 violates the dormant Commerce

Clause because it regulates commerce that occurs outside of California. Compl. ¶ 64. Indeed, the vast majority of manufacturers of flavored tobacco products are located outside California—something Defendants do not contest. SB793 thus facially violates the dormant Commerce Clause, and is per se invalid. Defendants' only counterargument is that this claim fails as a matter of law because, "[r]ather than regulating out-of-state tobacco product manufacturing, the law instead establishes restrictions for in-California retail sales of a discrete subset of tobacco products." MTD at 8–9. But the Supreme Court has rejected such a bright-line rule, and the cases on which Defendants rely addressed regulations that simply had some "upstream effects" but did "not control the production or sale of [of products] wholly outside California." *Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1104 (9th Cir. 2013). By contrast, Plaintiffs here allege that SB793: dictates manufacturing processes outside California, controls how flavored tobacco products are produced (and sold) outside California, and undermines the need for national uniformity in tobacco-product regulation.

**1.** A state law runs afoul of the negative implications of Congress's power "[t]o regulate Commerce ... among the several States" if its "practical effect" is to "'control [commercial] conduct beyond the boundaries of the State.'" *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). That is true even if the law is "triggered only by sales" occurring "within the State." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 580 (1986). In other words, the dormant Commerce Clause specifically prohibits "the application of a state statute to commerce that takes places wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy*, 491 U.S. at 336. When a state law does so, it is "invalid per se." *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1189–90 (9th Cir. 1990).

Under this extraterritoriality doctrine, the "critical inquiry" is "whether the practical effect of the regulation is to control conduct beyond the boundaries of the State." *Healy,* 491 U.S. at 336. And at this stage, where the factual record has not

been developed, this Court is not in a position to judge the practical effect of SB793.

As relevant here, courts look to two factors. *First*, courts "consider[] the consequences of the statute itself" and "how [it] may interact with the legitimate regulatory regimes of other States." *Id.* As the Ninth Circuit has explained, "[o]ne state cannot be permitted to dictate what other states must do within their own borders." *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018). *Second*, courts ask whether the industry at issue requires nationally uniform regulation. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 950 (9th Cir. 2013). As the Ninth Circuit has explained, "state regulation of activities that are inherently national or require a uniform system of regulation violates the dormant Commerce Clause." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1031 (9th Cir. 2021), *cert. granted*, 142 S. Ct. 1413 (2022).

Both factors here demonstrate that SB793 is unconstitutional. *First*, where the practical effects of a law fall almost entirely on out-of-state entities, the law violates the dormant Commerce Clause. In *Daniels Sharpsmart*, for example, the Ninth Circuit held that California could not use in-state operations of a medical waste treatment company to justify regulating its out-of-state waste disposal. 889 F.3d at 616. California impermissibly "attempted to regulate waste treatment everywhere in the country." *Id.*; *see also Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1323–24 (9th Cir. 2015) (holding California could not regulate transactions taking place outside the State's borders); *North Dakota v. Heydinger*, 825 F.3d 912, 921–22 (8th Cir. 2016) (invalidating Minnesota laws because "their practical effect is to control activities taking place wholly outside Minnesota").

That is the case here. SB793 tells out-of-state tobacco product manufacturers that they may not add characterizing flavors to their tobacco products before distributing them for retail sale in one of the Nation's largest markets, thereby dictating entirely out-of-state economic activity. *See* SB793 § 104559.5(a). The law bans the retail sale of a "flavored tobacco product," which it defines as "any tobacco

product that contains" any constituent "that is [1] *added by the manufacturer* to a tobacco product" and "[2] imparts a characterizing flavor." *Id.* (emphasis added). California has thus effectively anointed itself overseer of tobacco product manufacturing, forcing manufacturers to produce their products in a particular way as a condition of selling in California—even though the vast majority of manufacturers are outside the State.

Indeed, SB793's "practical effects" fall almost entirely outside California. *See Healy*, 491 U.S. at 336. For example, the vast majority of flavored tobacco products are manufactured outside of California. According to FDA's website, there are 1,236 registered tobacco manufacturers in the United States. *See* FDA, *Search Establishment Registrations*, https://trlm-ng-rlsite.fda.gov/establishments (last visited Feb. 8, 2022). Fewer than 140 are in California, and those are mostly small operations that manufacture e-liquids. *See id.* Moreover, the largest manufacturers of flavored tobacco products (*e.g.*, Reynolds, Philip Morris) are outside of California. *See* Compl. ¶¶ 5–9; *Altria Grp., Inc. v. United States*, 580 F. Supp. 3d 298, 300 n.1 (E.D. Va. 2022). Plaintiffs will also establish that "[m]ost of the money spent on tobacco products in California is exported from California to tobacco product manufacturers and farmers (80.4%) outside the state…."[2] Thus, SB793's regulation of the manufacture of flavored tobacco products is almost exclusively extraterritorial. And the costs imposed will be substantial. For example, menthol cigarette sales account for approximately one-third of $65.6 billion in annual cigarette sales, and the nicotine vapor industry alone accounts for about $22.1 billion in output annually.[3] But California has cut off one of the country's largest markets when it comes to retail

[2] *See* Chaloupka, F.J. & Glantz, S.A., *Potential Effects of a Ban on the Sale of Flavored Tobacco Products in California* 4, https://tinyurl.com/4626x4sa.

[3] *See* FTC, *Cigarette Report for 2021* (2023), https://tinyurl.com/yhk69rhy; Romeh, et al., *Trends in Annual Sales and Pack Price of Cigarettes in the US, 2015–2021* (June 3, 2022), https://tinyurl.com/yckk334v; Br. Amicus Curiae of Vapor Technology Association 21, *R.J. Reynolds v. Bonta*, No. 22A474 (U.S. Dec. 2, 2022) ("VTA Br.").

sales of flavored tobacco products, exacting significant costs far beyond (and almost exclusively beyond) the State's borders.[4]

*Second*, SB793 undermines the "compelling need for national uniformity in regulation" of tobacco products, *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997), and directly interferes with Congress's regulation of flavored tobacco products through the federal tobacco excise tax, *Schollenberger v. Pennsylvania*, 171 U.S. 1, 18–19 (1898). A state law that regulates "activities that are inherently national or require a uniform system of regulation" is unconstitutional. *Nat'l Pork*, 6 F.4th at 1031. Relatedly, when Congress "taxes and recognizes [a product] as a proper subject of commerce," a state cannot constitutionally exclude that product from the state "upon any terms whatever." *Schollenberger*, 171 U.S. at 18–19.

SB793 "interferes" with Congress's goal of having uniform, national regulations governing the manufacturing of tobacco products, and also with Congress's recognition and regulation of those products through federal taxation.

In the Tobacco Control Act, Congress explicitly recognized that "[t]he sale … of tobacco products … ha[s] a substantial effect on the Nation's economy." TCA § 2(10), Pub. L. No. 111-31, 123 Stat. 1776, 1777 (2009), codified at 21 U.S.C. § 387 note; *see* 7 U.S.C. § 1311 ("The marketing of tobacco constitutes one of the greatest basic industries of the United States with ramifying activities which directly affect interstate and foreign commerce at every point, and stable conditions therein are necessary to the general welfare."), *repealed by* Pub. L. No. 108-357 (Oct. 22, 2004); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 139 (2000) ("Congress' decisions to regulate labeling and advertising and to adopt the express policy of protecting 'commerce and the national economy ... to the maximum extent' reveal its intent that tobacco products remain on the market."). And because of that,

---

[4] The Court can and should take judicial notice of these facts showing SB793's effects. *See* Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record").

Congress authorized the U.S. Food & Drug Administration "to set national standards controlling the manufacture of tobacco products." TCA § 3(3).

The Tobacco Control Act thus demonstrates not only "that Congress actively regulate[s] the industry," *Canards*, 729 F.3d at 950, but also that the tobacco industry is a "substantial" one that "cannot be effectively regulated by isolated competing states," *Cloverleaf Butter Co. v. Patterson*, 315 U.S. 148, 167 (1942) (finding federal regulation of butter sufficient to confer Commerce Clause protections); *see Schollenberger*, 171 U.S. at 8–9 (similar).

Moreover, Congress and FDA have been actively regulating characterizing flavors in tobacco products. Congress began by banning characterizing flavors other than tobacco and menthol in cigarettes. 21 U.S.C. § 387g(a)(1)(A). FDA has subsequently sought data on characterizing flavors (except tobacco and menthol) in other tobacco products. *Regulation of Flavors in Tobacco Products*, 83 Fed. Reg. 12,294 (Mar. 21, 2018). *See generally Menthol in Cigarettes, Tobacco Products*, 78 Fed. Reg. 44,484 (July 24, 2013). And FDA is currently considering whether to ban menthol as a characterizing flavor in cigarettes and all characterizing flavors other than tobacco in cigars. *Tobacco Product Standard for Menthol in Cigarettes*, 87 Fed. Reg. 26,454 (May 4, 2022); *Tobacco Product Standard for Characterizing Flavors in Cigars*, 87 Fed. Reg. 26,396 (May 4, 2022). Thus, there can be no doubt that the federal government is actively regulating characterizing flavors in tobacco products.

But SB793 "interferes" with that "national regime," conflicts with the current federal permission for flavored tobacco products to be manufactured and sold, and imperils Congress's careful design. *See Nat'l Pork*, 6 F.4th at 1033. If California's ban is constitutional, then every state and locality may enact its own standard for flavored tobacco products. That would exacerbate an already complex patchwork of state and local regimes, where the same flavored tobacco products are lawful in some

places, but not others.[5] That is not what Congress intended. And the regulatory chaos augured by such balkanization threatens the stable conditions that are necessary for the tobacco industry. *See* 21 U.S.C. § 387 note. California's ban is therefore unconstitutional. *See Healy*, 491 U.S. at 337 (explaining the Commerce Clause "preclude[s]" this "kind of competing and interlocking local economic regulation").

Accordingly, Congress has recognized (and Plaintiffs will further establish) that the tobacco industry requires nationally uniform standards to produce flavored tobacco products. SB793 unconstitutionally undermines that "compelling need for national uniformity." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997).

Moreover, "what congress [ ] taxes and recognizes as a proper subject of commerce cannot be totally excluded from any particular state." *Schollenberger*, 171 U.S. at 19. After all, products subject to federal taxation are "lawful article[s] of commerce." *Id.* at 12. "A state has power to regulate the introduction of any article, including a food product, so as to insure purity of the article imported, but such police power does not include the total exclusion even of an article of food." *Id.* Put simply, a state's law "is invalid" to the extent that it bans federally taxed products. *Id.* at 25.

As in *Schollenberger*, Congress taxes most flavored tobacco products (just as it does most non-flavored tobacco products). *See* 26 U.S.C. § 5701. Indeed, Congress has done so since the Civil War, when a tax on cigarettes was imposed to raise federal revenues for the Union effort. Revenue Act of 1862, 37 Cong. Ch. 119, 12 Stat. 432. And more recently, Congress paid for a renewal and expansion of the Children's Health Insurance Program ("CHIP") under Medicaid with changes to the federal excise tax on tobacco products. CHIP Reauthorization Act of 2009, Pub. L. No. 111-3, § 701(h), 123 Stat. 8. If states could unilaterally ban federally taxed products, that would frustrate Congress's power under the Commerce Clause to regulate interstate commerce through taxation (in addition to Congress's power to raise and collect

---

[5] *E.g.*, Mass. Gen. Law c. 270, § 28; Edina, Minn. City Code § 12-257.

taxes). For this additional reason, SB793 is an unconstitutional extraterritorial regulation.

**2.** Defendants' sole counterargument is that this Commerce Clause theory fails as a matter of law because SB793 does not regulate out-of-state manufacturers, but "is instead an in-state sales restriction." MTD 8. But, as relevant to the Commerce Clause, SB793 *does* regulate manufacturing. SB793 bans retail sale of "flavored tobacco products." SB793 § 104559.5(b). The term "flavored tobacco product" is, in turn, defined as a product that "contains a constituent that imparts a characterizing flavor." *Id.* § 104559.5(a)(4). And a "constituent" is defined as "any ingredient, substance, chemical, or compound … *that is added by the manufacturer* … during the processing, manufacture, or packing of the tobacco product." *Id.* § 104559.5(a)(2) (emphasis added). So SB793 only applies to products where a manufacturer adds a characterizing flavor during manufacturing. California thus regulates how out-of-state manufacturers produce their tobacco products.

Moreover, the Supreme Court has held that even if a law's restrictions are "triggered only by sales" occurring "within the State," the state law can still run afoul of the dormant Commerce Clause. *Brown-Forman*, 476 U.S. at 580. It is true that, notwithstanding *Brown-Forman*, the Ninth Circuit has upheld state laws that regulate "only the in-state sales of products that are brought into or are otherwise within the borders of" the state. *Nat'l Pork*, 6 F.4th at 1031, 1033. In *National Pork*, for example, the Ninth Circuit upheld California's ban on the sale of pork that did not comply with California standards, specifically the size of pig pens. *Id.* at 1025. The court held that California's law "may result in the imposition of complex compliance requirements on out-of-state farmers," but that did not create "an impermissible extraterritorial effect." *Id.* at 1029.

But *National Pork* is inapplicable here for at least two reasons. *First*, through the TCA, Congress has established a much more compelling need for national uniformity in tobacco product regulation than the pork production industry

established. *See supra* Part I.A.1. *Second* and relatedly, tobacco products are federally taxed whereas pork products are not, which confirms the greater need for national uniformity in regulation and, pursuant to *Schollenberger*, provides a separate ground for invalidating SB793. *See* 171 U.S. at 19. Indeed, *National Pork* expressly distinguished cases "concern[ing] taxation." 6 F.4th at 1031. The same is true for Defendants' other primary cases, which also involved products *not* subject to a national regulatory regime as intricate and compelling as the TCA and *not* subject to a federal excise tax. *See* MTD 7–8 (citing cases about foie gras and shark fins). *National Pork* thus does not control here.

In any event, *National Pork* is pending before the U.S. Supreme Court. No. 21-468. The Court held argument last October, and a decision is expected by July. What the Court says will very likely affect how the dormant Commerce Claim in this case is judged. Accordingly, if this Court is inclined to dismiss the dormant Commerce Claim under current Ninth Circuit precedent, it should hold this case in abeyance until the Supreme Court has issued an opinion in *National Pork*. *See* Order, Dkt. No. 55, *Pharm. Res. & Mfrs. of Am. v. Alan McClain*, No. 4:21-cv-864 (E.D. Ark. Dec. 29, 2022) (staying proceedings pending decision in *National Pork*).

**3.** Alternatively, if the Court is inclined to dismiss the Complaint, it should grant Plaintiffs leave to amend with other facts and with the benefit of guidance from the Supreme Court's ruling in *National Pork*. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[I]n dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**B.    Plaintiffs have stated a claim that SB793 is unconstitutional because its burdens on interstate commerce exceed its putative benefits.**

Plaintiffs have adequately alleged that SB793 is also unconstitutional because its substantial burdens on interstate commerce exceed its (illusory) benefits. A state law violates the dormant Commerce Clause even if it only incidentally burdens

interstate commerce when it is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *see Dep't of Revenue v. Davis*, 553 U.S. 328, 353 (2008) (Under so-called *Pike* balancing, "even nondiscriminatory burdens on commerce may be struck down on a showing that those burdens clearly outweigh the benefits of a state or local practice."); *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018). As judicially noticeable facts show and (Plaintiffs will further establish), that is the situation here. In all events, this is not a determination that should be made at the motion-to-dismiss stage. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

### 1. Plaintiffs have adequately alleged that SB793 imposes substantial burdens on interstate commerce.

SB793 imposes onerous burdens on interstate commerce—indeed, the brunt of this law will be felt outside California. Contrary to Defendants' suggestion that non-discriminatory measures that appear to regulate in-state conduct never impose substantial burdens on interstate commerce, MTD 10, relevant burdens for the *Pike* inquiry include "impacts on commerce beyond the borders" of a state and "[i]mpacts that fall more heavily on out-of-state interests," *Pac. Nw. Venison Prods. v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994). For example, the Supreme Court invalidated a North Carolina law that required all apples to have either a USDA label or no label. *Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 351 (1977). By requiring out-of-state apple shippers to incur the additional expense of removing labels that were permitted or required in another state (there, Washington) and by removing out-of-state sellers' competitive advantage that was based on their reputation as high-quality, the law impermissibly burdened interstate commerce. *Id.* Indeed, Defendants' own cases show that discrimination is not the only way to demonstrate "a significant burden on interstate commerce." MTD 10.

Additionally, under the undue-burden inquiry, state laws "impose significant burdens on interstate commerce as a consequence of 'inconsistent regulation of

activities that are inherently national or require a uniform system of regulation.'" *Nat'l Pork*, 6 F.4th at 1032 (quoting *Canards*, 729 F.3d at 952).

Judicially noticeable facts show that SB793 imposes severe burdens on out-of-state commerce in each of these ways. *First*, as explained above, SB793's practical effects fall almost entirely outside California. The State is one of the largest markets in the Nation for flavored tobacco products and yet the vast majority of the money spent on tobacco products in California is exported to manufacturers and farmers outside the State. *See supra* n.2. Menthol cigarettes, which are subject to the ban, are a full third of the $65.6 billion U.S. cigarette market. *See supra* n.3. Given that reality, SB793 will force manufacturers (almost all of whom are out of state) to change their operations, resulting in costs for a national industry that generates tens of billions of dollars in economic output and supports hundreds of thousands of jobs. *See id.* (over 130,000 jobs supported by vapor industry alone). For the manufacturer Plaintiffs specifically, these losses will be significant. *See* Compl. ¶ 52.

*Second*, as explained above, SB793 interferes with the TCA's comprehensive regulation of tobacco products and the tobacco industry's need for uniform regulation, and runs directly counter to the federal government's recognition of such products as valid articles of commerce and taxation. *See supra* Part I.A.1. Those realities also "impose significant burdens." *Nat'l Pork*, 6 F.4th at 1032.

Notably, SB793 imposes far greater interstate commerce burdens than the burdens in *National Pork*. There, the Ninth Circuit emphasized that a loss to some specific market participants from a state regulation, without more, does not amount to a substantial enough burden. *See id.* at 1032–33. By contrast, SB793 does not merely increase costs for consumers or manufacturers through greater regulatory obligations; rather, it *bans* the retail sale of almost all flavored tobacco products. *Compare Canards*, 729 F.3d at 949–50, 952 (emphasizing that challenged law, which was upheld, did *not* amount to a "complete [sales] ban"). And SB793 bans products Congress recognizes as valid articles of interstate commerce through excise taxes,

unlike the products in *National Pork*. *See Schollenberger*, 171 U.S. at 19.

For each of these reasons, SB793's judicially noticeable burdens on interstate commerce are substantial, *see supra* n.4, and the Court must weigh those burdens against the putative benefits with the benefit of further factual development.

### 2. Whether SB793's putative justifications outweigh the ban's burdens on interstate commerce is a question of fact that cannot be decided on a motion to dismiss.

Because SB793 imposes severe burdens on interstate commerce, the law's benefits would need to be immense to justify it under the dormant Commerce Clause. A state law that substantially burdens interstate commerce but "cannot be said to make more than the most speculative contribution to [the State's interest]" is invalid. *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 447 (1978). And, contrary to Defendants' contention, MTD 11–13, judicially noticeable facts show (and Plaintiffs will further establish) that SB793's ostensible benefits are illusory.

The Attorney General has advanced two related justifications for SB793's draconian ban: (i) reducing harm to public health and (ii) reducing youth use of flavored tobacco products. MTD 11–12. While those are laudable goals, whether SB793 actually achieves them, and does so to an extent that outweighs the ban's burdens of interstate commerce, is a question of fact that cannot be resolved on a motion to dismiss. *See Parks School of Business, Inc.*, 51 F.3d at 1484.

Indeed, judicially noticeable facts show (and Plaintiffs will further establish) that these purported benefits are illusory when it comes to SB793. Indeed, SB793 will likely *undermine* those ascribed goals, as experience in other jurisdictions shows.

*First*, SB793 is very unlikely to reduce harms to public health. For example, recent experience shows that bans on flavored tobacco products have not reduced smoking. RAI Services Company, *Comment from RAI Services Company* 29–32, 80–81 (Aug. 3, 2022) (collecting independent studies), https://tinyurl.com/mrzkne43. For example, in the European Union, smoking did not decrease following its ban on

menthol cigarettes; rather, the likelihood of being a daily smoker actually increased. *Id.* at 80. And following flavored-tobacco bans in Canada and Massachusetts, there was no evidence that the bans reduced overall smoking rates. *Id.* at 29–30 (discussing studies). Indeed, studies show that many menthol smokers simply switched to non-menthol cigarettes and, in some cases, smoking *increased* following a ban. *Id.* at 80–81. That evidence runs directly counter to the Attorney General's prediction that SB793 will reduce smoking and thereby improve public health.

Moreover, as FDA has recognized, there is a widespread illicit trade in tobacco products. *See* FDA, *Deeming Tobacco Products*, 81 Fed. Reg. 28,973, 29,007 (May 10, 2016). If consumers cannot obtain flavored tobacco products from reputable retail establishments because of California's ban, they may try to obtain them from illicit sources that evade federal and state regulation. That will in turn lead to an increase in associated crimes. Scientific studies and experiences of other countries that have banned flavored tobacco products confirm this. *See Comment from RAI Services Company* 83–101 (collecting studies about risks of increased illicit trade based on FDA's proposed ban of menthol as a characterizing flavor in cigarettes).

Relatedly, SB793 also may cause consumers to engage in risky product tampering and self-mentholation, given the relative ease of converting regular cigarettes to mentholated cigarettes and the ready availability of products suitable for mentholating cigarettes. *See id.* at 118–20. For example, "[t]he EVALI (e-cigarette or vaping product use-associated lung injury) crisis shows that product tampering can present significant risks and lead to serious consequences." *Id.* at 119. That crisis led to hospitalizations and deaths most likely caused by an additive found in e-cigarette cartridges containing the marijuana constituent THC. CDC, *Outbreak of Lung Injury Associated with the Use of E-Cigarette, or Vaping, Products* (Feb. 25, 2020), https://tinyurl.com/3djwser2. Combining additives with tobacco products outside the regulated manufacturing process presents potentially harmful consequences.

The ban could also cause significant negative consequences for communities

of color, including African Americans. *See id.* at 102–18. Because African American smokers in particular disproportionately prefer menthol cigarettes, California's ban would disproportionately harm them, including by exposing them to negative encounters with law enforcement. *See id.* at 102–07; *see also id.* at 104 (citing Letter from ACLU, et al., to Congressman Frank Pallone (Feb. 27, 2020)) (ACLU and others noting "concern[s] that law enforcement's attempts to enforce a menthol and flavored tobacco ban will undoubtedly lead" to such negative encounters).

And the ban may cause consumer confusion about the risks of tobacco products, potentially leading to more use of non-flavored tobacco products because consumers will believe that flavored products are especially risky (as compared with non-flavored products that remain on the market). *See id.* at 122–28.

Thus, SB793's statewide ban stands to frustrate, rather than further, California's stated goal of reducing harms to public health. And California's factual arguments to the contrary, MTD 11–12, (in addition to being misguided) are irrelevant at the motion-to-dismiss stage.

*Second*, Plaintiffs will show that SB793 also may well cause increased cigarette smoking specifically among high school students, which is precisely what happened in San Francisco following its local ban on flavored tobacco products. *See id.* at 31–32 (discussing Abigail S. Friedman, *A Difference-in-Differences Analysis of Youth Smoking and a Ban on Sales of Flavored Tobacco Products in San Francisco, Cal.*, 175 JAMA Pediatrics 863 (2021), https://tinyurl.com/4fx9yyfd). That is because individuals tend to substitute to other products when characterizing flavors are banned, rather than quitting altogether. *Id.* Canada also saw increases in youth smoking rates following its recent menthol ban. *Id.* at 29–30. So the Attorney General's second putative justification (while commendable) also fails.

For each of these reasons, judicially noticeable facts show that SB793's putative benefits are illusory, *see supra* n.4, and cannot outweigh its substantial burdens on interstate commerce, *see supra* Part I.B.1.

*     *     *

Because it places significant burdens on interstate commerce and its purported benefits are unsupported, SB793 fails the *Pike* balancing test and is invalid under the Commerce Clause. But if the Court is nonetheless inclined to dismiss the Commerce Clause Claim, it should grant Plaintiffs leave to amend their Complaint with other facts and with the benefit of the Supreme Court's ruling in *National Pork*.

C.     **The Tobacco Control Act's preservation clause does not cure SB793's constitutional defects.**

Finally, Defendants argue that the TCA's preservation clause exempts SB793 from the restrictions of the Commerce Clause. MTD 13. But the case they cite holds that "for a state regulation to be removed from the reach of the dormant Commerce Clause, congressional intent" to permit "state burdens on commerce" must be "*unmistakably clear.*" *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984) (emphasis added). In other words, Congress must "affirmatively contemplate otherwise invalid state legislation" in such removal. *Id.*

Here, California has not met its burden to prove such a clear statement. *See Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 933 (9th Cir. 2011). Indeed, the TCA's preservation clause does not "unmistakably" authorize California to reach beyond its borders and control out-of-state manufacturers, to impose state or local tobacco product standards with nationwide effect, or to categorically prohibit entire classes of tobacco products (*i.e.*, to violate the dormant Commerce Clause), or "affirmatively contemplate" such legislation. It says,

> [e]xcept as provided in [the preemption clause], nothing in this subchapter … shall be construed to limit the authority of … a State … to enact … any law … with respect to tobacco products that is in addition to, or more stringent than, requirements established under this subchapter, including a law … relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age ….

21 U.S.C. § 387p(a)(1). Preserving certain state authority to regulate the sale, distribution, possession, *etc.* of tobacco products does not clearly state that states may reach beyond their borders or impose onerous burdens on interstate commerce. And § 387p, "at best, leaves it ambiguous whether Congress affirmatively contemplated" statewide bans like SB793. *Yakima Valley*, 654 F.3d at 934. That is insufficient to immunize the law from this dormant Commerce Clause challenge. *See id.*[6]

## II.    THOUGH PLAINTIFFS' EXPRESS PREEMPTION CLAIM IS FORECLOSED BY NINTH CIRCUIT PRECEDENT, THAT PRECEDENT IS WRONG.

Plaintiffs have stated an express preemption claim, although that claim is currently foreclosed in this Court by the Ninth Circuit's decision in *L.A. County*. The federal Tobacco Control Act preempts state laws (like SB793) that regulate characterizing flavors that manufacturers can add to tobacco products, and does not save from preemption laws (like SB793) prohibiting the retail sale of such products. 21 U.S.C. § 387p(a). The plaintiffs in *L.A. County* (including several Plaintiffs here) have sought Supreme Court review of that decision. And Plaintiffs here preserve their express preemption claim for appellate review.

Plaintiffs have explained previously that: the Ninth Circuit's interpretation of the TCA's preemption clause is incorrect; SB793 falls within the TCA's preemption clause even under the Ninth Circuit's erroneous decision; and the Ninth Circuit's alternative holding concerning the TCA's savings clause is likewise incorrect. Dkt. No. 13-1, at 6–15. Plaintiffs briefly recount those arguments here.

*First*, *L.A. County* was wrong that a locality can evade the TCA's preemption clause simply by framing its law as a ban on the retail sale of products that do not meet local standards. The TCA's preemption clause preempts "*any*" local "requirement which is different from, or in addition to," federal "tobacco product

---

[6] Moreover, as Plaintiffs have explained, the far better reading of the preservation clause is that it does *not* authorize SB793 at all. *See infra* Part II.

standards." 21 U.S.C. § 387p(a)(2)(A) (emphasis added). Whether framed as a product standard or a retail sales ban, the effect is the same (no characterizing flavors in tobacco products), which is why the Supreme Court has rejected the Ninth Circuit's atextual limitation on such a preemption clause before. *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 248–49 (2004).

The TCA's plain text confirms that conclusion. It specifically says that tobacco product standards can govern a tobacco product's "properties," "constituents," and "additives." 21 U.S.C. § 387g(a)(4)(B)(i). Indeed, the TCA makes it patently clear that the type of law at issue here is a paradigmatic "tobacco product standard." One of only two tobacco product standards in the Act itself is a ban on characterizing flavors in cigarettes (other than tobacco and menthol). *Id.* § 387g.

And even if tobacco product standards were somehow limited to production mandates, *L.A. County* still conflicts with *National Meat Ass'n v. Harris*, 565 U.S. 452, 464 (2012). There, the Supreme Court shut the door on state attempts to end-run a federal law that preempts state product standards simply "by framing [such a standard] as a ban on the sale of [a product] produced in whatever way the State disapproved." *Id.*

*Second*, even under *L.A. County*, SB793 falls under the TCA's preemption clause because it clearly reaches into and regulates how "flavored tobacco products" must be produced. SB793 bans any product that "contains a *constituent* that imparts a characterizing flavor." SB793 § 104559.5(a)(4) (emphasis added). It then defines a "[c]onstituent" as "any ingredient, substance, chemical, or compound … *that is added by the manufacturer* … during the processing, manufacture, or packing of the tobacco product." *Id.* § 104559.5(a)(2) (emphasis added). By applying the ban only to products where a manufacturer adds a characterizing flavor in the manufacturing process, SB793 tells manufacturers how to produce their products.

*Third*, *L.A. County* was also incorrect that the TCA savings clause saves local laws that ban the retail sale of products that fail to meet local standards. The savings

clause only saves requirements "relating to" the sale of tobacco products—not requirements "prohibiting" their sale. 21 U.S.C. § 387p(a)(1), (a)(2)(B). Moreover, the savings clause does not save the ban because that clause saves only age-based requirements. *L.A. County*, 29 F.4th at 561 (Nelson, J., dissenting).

*       *       *

Thus, under the correct interpretation of the TCA and Supreme Court precedent, Plaintiffs have stated a claim that SB793 is preempted. Plaintiffs preserve this argument for appellate review. Because of the Ninth Circuit's contrary decision in *Los Angeles County*, though, Plaintiffs recognize that, absent further direction from the Supreme Court or the Ninth Circuit, this Court must dismiss Count I.

**CONCLUSION**

The Court should deny Defendants' motions to dismiss as to the dormant Commerce Clause claim. And while Plaintiffs acquiesce in the dismissal of their preemption claim, they preserve their arguments for further appellate review. If the Court currently is inclined to dismiss the Complaint, Plaintiffs ask that this Court hold this case in abeyance pending the Supreme Court's ruling in *National Pork*, or at the very least grant Plaintiffs leave to amend their complaint.

Dated: February 10, 2023

Respectfully submitted,

JONES DAY

By: /s/ Noel J. Francisco
    Noel J. Francisco*
    njfrancisco@jonesday.com

Noel J. Francisco* (D.C. Bar No. 464752)
Christian G. Vergonis* (D.C. Bar No. 483293)
Ryan J. Watson* (D.C. Bar No. 986906)
Andrew Bentz* (D.C. Bar No. 1020719)
JONES DAY
njfrancisco@jonesday.com
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700

Steven N. Geise (SBN 249969)
JONES DAY
sngeise@jonesday.com
4655 Executive Drive
Suite 1500
San Diego, CA 92121
Tel: (858) 314-1200
Fax: (844) 345-3178

*admitted *pro hac vice*

*Counsel for Plaintiffs*
R.J. REYNOLDS TOBACCO COMPANY;
R.J. REYNOLDS VAPOR COMPANY;
AMERICAN SNUFF COMPANY, LLC;
SANTA FE NATURAL TOBACCO
COMPANY, INC.; NEIGHBORHOOD
MARKET ASSOCIATION, INC.; and
MORIJA, LLC dba VAPIN' THE 619