UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY, et al,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT BONTA, in his official capacity as Attorney General of California; and SUMMER STEPHAN, in her official capacity as District Attorney for the County of San Diego,<br><br>Defendants. | Case No.: 22-cv-01755-CAB-WVG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Doc. Nos. 31, 32] |

This matter is before the Court on Defendants' motion to dismiss [Doc. No. 31].[1] The motion has been fully briefed, and oral argument was held on March 14, 2023. For the reasons set forth below, the motion is **GRANTED**.

**I.    BACKGROUND**

In November 2022, California voters approved Senate Bill 793 ("S.B. 793"), a bill prohibiting the retail sale of "flavored tobacco products" within the State of California.

---

[1] Defendant Summer Stephan filed a motion for joinder [Doc. No. 32] in Defendant Attorney General Bonta's motion to dismiss. The ruling on this motion to dismiss applies to both Defendants.

S.B. 793 as codified states that "a tobacco retailer, or any of the tobacco retailer's agents or employees, shall not sell, offer for sale, or possess with intent to sell or offer for sale, a flavored tobacco product or a tobacco product flavored enhancer." Cal. Health & Safety Code § 104559.5(b)(1). As mentioned in the Complaint, "the original motivation for California's ban on flavored tobacco products was to prevent youth usage of tobacco products." [Doc. No. 1 at ¶ 24]. The California legislature engaged in several deliberations prior to writing the final bill, considering statistics about youth usage of flavored tobacco products and evidence related to the deaths and harms caused by the sustained use of tobacco. [Doc. No. 31 at 12].

On November 9, 2022, immediately following the November 2022 election, Plaintiffs brought this lawsuit against Defendants Attorney General Robert Bonta and San Diego County District Attorney Summer Stephan. The Complaint alleges that S.B. 793 (1) is preempted by the Smoking Prevention and Tobacco Control Act, ("TCA") Pub. L. No. 111-31, 123 Stat. 1776 (2009) and (2) violates the dormant Commerce Clause.[2] The Ninth Circuit's decision in *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542 (9th Cir. 2022), *cert. denied sub nom., R.J. Reynolds Tobacco Co. v. County of Los Angeles, CA*, No. 22-338, 2023 WL 2227660 (U.S. Feb. 27, 2023), bars the Preemption claim. Thus, the only question for this Court to consider is whether Plaintiffs have sufficiently stated a claim under the dormant Commerce Clause.

## II. STANDARD FOR REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted"—generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a recognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure

---

[2] Plaintiffs also filed a motion for preliminary injunction and injunction pending appeal [Doc. No. 13] pertaining to their Preemption claim. This Court denied that motion, and the denial was later affirmed by the Ninth Circuit. [Doc. No. 37].

8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . . more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the collective facts pled "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court need not accept as true "legal conclusions" contained in the complaint, *id.*, or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### III. DISCUSSION

Defendants argue S.B. 793 does not violate the dormant Commerce Clause because it does not directly regulate out-of-state commerce, favor in-state businesses, or impose excessive burdens on out-of-state commerce. Plaintiffs argue S.B. 793 violates the dormant Commerce Clause because it attempts to control the actions of out-of-state manufacturers. Plaintiffs fail to state a claim.

#### A. Dormant Commerce Clause

The Commerce Clause grants Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with Indian tribes." U.S. Const. art. I, § 8, cl. 3. The Clause "has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*,

511 U.S. 93, 98 (1994). This "dormant" Commerce Clause is "driven by concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests, by burdening out-of-state competitors.'" *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 268, 273-74 (1998)).

The dormant Commerce Clause is violated if a state regulation discriminates against interstate commerce. "If a statute discriminates against out-of-state entities on its face, in its purpose, or in its practical effect, it is unconstitutional unless 'it serves a legitimate local purpose, and this purpose could not be served as well by available nondiscriminatory means.'" *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting *Maine v. Taylor*, 477 U.S. 131, 138 (1986)). The dormant Commerce Clause also bars states from discriminating against out-of-state entities by "directly control[ling] commerce occurring wholly outside the boundaries of a State," also known as the extraterritoriality doctrine. *Healy v. Beer Inst. Inc.*, 491 U.S. 324, 336 (1989). Finally, if a state regulation is not discriminatory, it should be upheld, "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

1. **S.B. 793 Does Not Discriminate Against Out-Of-State Commerce**

A statute is not "invalid merely because it affects in some way the flow of commerce between the states." *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976). A statute that "treat[s] all private companies exactly the same" does not discriminate against interstate commerce. *See United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007). The Ninth Circuit has further found that a state law ban that treats all entities the same and prohibits an item regardless of its origin is not discriminatory. *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1146 (9th Cir. 2015) (finding a law banning the possession and sale of shark fins in California was not discriminatory where out-of-state shark fins would not be able to be sold in California);

*See also Ass'n des Eleveurs de Canards et d'Oies due Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) (finding a law banning the sale of a product that was "the result of force feeding birds" was not discriminatory when the ban applied to both intrastate and interstate products).

Plaintiffs have not alleged facts sufficient to demonstrate that S.B. 793 is discriminatory on its face, in its purpose, or in its practical effects. The text of S.B. 793 does not expressly discriminate against out-of-state entities, as it only regulates the actions of retailers in California. *See* Cal. Health & Safety Code § 104559.5. Additionally, the purpose of S.B. 793 was to promote the health and safety of California residents, not discriminate against out-of-state entities.

Plaintiffs' opposition argues that the practical effects of S.B. 793 "fall almost entirely on out-of-state entities" because the majority of flavored tobacco products are manufactured outside of California. [Doc. No. 34 at 5]. Specifically, Plaintiffs argue that S.B. 793 "tells out-of-state tobacco manufacturers that they may not add characterizing flavors to their tobacco products before distributing them for retail sale in one of the Nation's largest markets." [Doc. No. 34 at 5]. There is no such assertion in the language of S.B. 793. Manufacturers are only mentioned in S.B. 793 in reference to how retailers are to determine whether a product constitutes a prohibited flavored tobacco product. *See* § 104559.5. Furthermore, the only discrimination alleged in the Complaint is that out-of-state Plaintiffs are harmed because the ban "severely restricts their ability to market and sell such products to customers in California." [Doc. No. 1 at ¶ 52]. The Complaint does not assert that S.B. 793 attempts to treat any out-of-state entities differently from in-state entities. All manufacturers, regardless of geographic location, are now potentially restricted in the marketability and sale of flavored tobacco products. For these reasons, the Court does not find that S.B. 793 discriminates against out-of-state entities.

### 2. **S.B. 793 Does Not Violate the Extraterritoriality Doctrine**

A statute that "controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of

whether the statute's extraterritorial reach was intended by the legislature." *Healy*, 491 U.S. at 336. However, the extraterritoriality doctrine as applied in *Healy* extends only to price-fixing statutes. *See Ass'n des Eleveurs de Canards et d'Oies due Quebec*, 729 F.3d at 951 (finding *Healy* inapplicable where the state statute did not impose any prices for the banned products and did not tie in-state prices to out-of-state prices). Furthermore, even if a statute has "significant extraterritorial effects," it does not violate the dormant Commerce Clause "when those effects result from the regulation of in-state conduct." *Chinatown Neighborhood Ass'n*, 794 F.3d at 1145.

Plaintiffs argue that S.B. 793 violates the extraterritoriality doctrine because its practical effects fall solely on out-of-state entities. In oral argument, Plaintiffs cited *Healy* as a basis for its extraterritoriality argument, but *Healy* is inapplicable. S.B. 793 is not a price-fixing statute, as it does not impose any prices for flavored tobacco products or relate California prices to out-of-state prices for these products. Additionally, any significant extraterritorial effects of S.B. 793 would result from the regulation of conduct occurring only in California. S.B. 793 solely controls the actions of retailers located within California by preventing them from selling flavored tobacco products. S.B. 793 does not control the retail sales of these products in other states, nor does it control the ability of manufacturers in or outside of California to continue manufacturing flavored tobacco products. In fact, manufacturers are still permitted to manufacture flavored tobacco products in California.

Accordingly, the Court does not find that the extraterritoriality doctrine is implicated by S.B. 793, and Plaintiffs have not established that S.B. 793 is discriminatory on its face, in its purpose, or in its practical effect.

### 3. S.B. 793 Does Not Unduly Burden Out-of-State Entities

A nondiscriminatory state law may still be invalidated under the dormant Commerce Clause if it substantially burdens interstate commerce. *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 528 (9th Cir. 2009). "A Plaintiff must first show that the statute imposes a substantial burden before the Court will determine if the benefits of the challenged law are illusory." *Ass'n des Eleveurs de Canards et d'Oies*

*du Quebec*, 729 F.3d at 951-52. Most statutes that impose a burden on interstate commerce do so because they are discriminatory. *Id.*

Plaintiffs make the conclusory allegation that the "ban imposes burdens on out of state commerce," [Doc. No. 1 at ¶ 66], but they do not allege facts supporting this conclusion. In their opposition, Plaintiffs argue that out-of-state commerce is burdened by forcing out-of-state manufacturers to change their operations, with costs of "tens of billions of dollars." [Doc. No. 34 at 13]. Even if the Court were to accept that S.B. 793 would cause financial loss to the tobacco industry, that burden alone is not excessive enough for the Court to find that the ban substantially burdens interstate commerce. *See Nat'l Ass'n of Optometrists*, 567 F.3d at 528 (declining to find a dormant Commerce Clause violation where the only burden identified was plaintiffs' financial losses).

Plaintiffs' argument that S.B. 793 unconstitutionally undermines the requirement for national uniform standards in the production of flavored tobacco products is unpersuasive. S.B. 793 does not impose any standard of manufacturing on tobacco products. It does not require manufacturers to grow or process their products in any particular manner that departs from any national uniform standard. Plaintiffs have not demonstrated how S.B. 793's prohibition of the retail sale of flavored tobacco products within the State of California requires out-of-state manufacturers to change or depart in any way from nationally uniform standards of production of such products.

S.B. 793 does not set standards of manufacture or marketing contrary to federal national standards, it is California's decision to opt out of the market for those flavored tobacco products. The TCA expressly preserved to state authority the right to place restrictions on the retail sale of a tobacco product, including its sale altogether. *See Cnty. of Los Angeles*, 29 F.4th at 555 ("Congress allowed the federal government to set the standards regarding how a product would be manufactured and marketed, but has left states, localities, and tribal entities the ability to restrict or opt out of that market altogether."). S.B. 793 does not unconstitutionally violate federal regulation of tobacco product manufacture.

Plaintiffs' argument, citing *Schollenberger v. Pennsylvania*, 171 U.S. 1, 25 (1898), that a state law that bans within its state the sale of federal taxed products is invalid is also not persuasive. Under the TCA provisions, Congress allows states to place restrictions, including bans, on the retail sale of federally taxed tobacco products within a state. California is not bound to furnish a market for flavored tobacco products even if by opting out of that market it lessens the revenue of the general government. *See Austin v. Tennessee*, 179 U.S. 343, 349, (1900) (affirming a Tennessee law making it a misdemeanor to sell cigarettes in Tennessee).

For these reasons, the Court does not find that an undue burden has been imposed by S.B. 793.[3]

### B. Leave to Amend

Plaintiffs ask the Court to grant leave to amend or stay this case until the Supreme Court issues a decision in *National Pork Producers Council v. Ross*, 6 F.4th 1021 (9th Cir. 2021). Leave to amend may be denied "if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Chinatown Neighborhood Ass'n*, 794 F.3d at 1144. The Court finds that any future amendment would be futile. The Court also declines to stay this case pending the decision in *National Pork*.

### IV. CONCLUSION

Because Plaintiffs' first claim of Preemption is barred by the Ninth Circuit's decision in *County of Los Angeles*, Plaintiffs' Preemption claim (Count One) is **DISMISSED as moot**. Because S.B. 793 does not discriminate against or impose an undue burden on interstate commerce, the Court finds that the Complaint has not stated a claim under the

---

[3] Because S.B. 793 is not discriminatory and does not impose a significant burden on interstate commerce, the Court need not assess the benefits of the law and the availability of less-burdensome alternatives. *See Chinatown Neighborhood Ass'n*, 76 F.3d at 1147.

dormant Commerce Clause. Accordingly, Plaintiffs' dormant Commerce Clause claim (Count Two) is **hereby DISMISSED with prejudice**.

It is **SO ORDERED**.

Dated: March 15, 2023

_____
Hon. Cathy Ann Bencivengo
United States District Judge